2000 ND 136

**In the Matter of JURAN AND MOODY, INC., a/k/a JM Dissolution, JM Capital Corporation, Juran and Moody Financial Group, Inc., Municipal Capital Markets Corporation, George Frank, and their Officers, Directors, Employees, Salesmen, Affiliated Companies, and escrow Agents or Trustees who acted as Agents for any of the Respondents.**

**North Dakota Securities Commissioner, Appellant,**

**v.**

**Juran and Moody, Inc., a/k/a JM Dissolution, JM Capital Corporation, Juran and Moody Financial Group, Inc., Municipal Capital Markets Corporation, George Frank, and their Officers, Directors, Employees, Salesmen, Affiliated Companies, and escrow Agents or Trustees who acted as Agents for any of the Respondents, Respondents and Appellees.**

**No. 990355.**

Supreme Court of North Dakota.

July 3, 2000.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

James L. Norris, Special Assistant Attorney General, James L. Norris, P.C., Bismarck, for appellant.

Todd Ervin Zimmerman, Dorsey & Whitney, Fargo, for respondents and appellees.

KAPSNER, Justice.

[¶ 1] The North Dakota Securities Commissioner ("Commissioner") appeals from the district court's dismissal of his appeal from the final decision of the administrative law judge ("ALJ") which dismissed the Commissioner's order against Juran and Moody, Inc., et al. ("Juran and Moody"). We hold the Commissioner is allowed to appeal under N.D.C.C. § 28–32–15 and has standing to appeal. We therefore reverse and remand to the district court.

I

[¶ 2] On July 24, 1997, the Commissioner issued an order against Juran and Moody. The Commissioner ordered Juran and Moody to stop offering unregistered, nonexempt securities and to pay $175,000 for violations of securities laws. Juran and Moody timely requested a hearing.

Juran and Moody filed objections to the Commissioner's order, asserting, in part, the Commissioner had improperly destroyed documents regarding the treatment of securities transactions of other companies [1] and Juran and Moody had relied on those documents in its own securities transactions. The Commissioner submitted a request for an ALJ to the Office of Administrative Hearings ("OAH"). The request listed the Commissioner and Juran and Moody as the parties, described the matter as an "[a]ppeal of Commissioner's order based on unregistered securities offerings, misrepresentation and failure to provide information to the Commissioner," and indicated the Commissioner sought an ALJ "[t]o conduct the hearing, issue findings of fact, conclusions of law, and a *final* order." (emphasis in original). Explaining his decision to request a final order, the Commissioner indicated he "felt that it was very important to allow the hearing officer to make the final decision since Juran & Moody were already accusing the Commissioner of being biased."

[¶ 3] The OAH designated an ALJ to hear the matter. Prior to a hearing, several motions were made. Juran and Moody moved the ALJ for permission to serve interrogatories upon the Commissioner. The Commissioner initially contested the motion but later provided Juran and Moody with the requested information. Juran and Moody successfully moved the ALJ to exclude an affidavit submitted by the Commissioner. Both Juran and Moody and the Commissioner moved the ALJ for summary judgment.

[¶ 4] A hearing was held before the ALJ in November 1998. Juran and Moody and the Commissioner attended and presented arguments to the ALJ. On January 22, 1999, the ALJ issued "Findings of Fact, Conclusions of Law, and Order on Cross–Motions for Summary Judgment." The ALJ found Juran and Moody did not violate securities registration laws and dis-

1. Juran and Moody refers to these documents as "no action letters" in which the Commis- sioner advised the companies they would not have to register their proposed securities.

missed the Commissioner's imposition of civil penalties. The ALJ, however, did not resolve all the issues. The Commissioner withdrew the allegations regarding the remaining issues. The ALJ issued a final order of dismissal on April 20, 1999.

[¶ 5] The Commissioner appealed to district court. Asserting the Commissioner lacked standing to appeal, Juran and Moody filed a motion to dismiss. The court concluded "the agency has not established that it has 'standing' for purposes of appealing its own final order" and granted Juran and Moody's motion to dismiss. The Commissioner appealed.

## II

[¶ 6] The Commissioner argues N.D.C.C. § 28–32–15 should be interpreted to allow his appeal from the ALJ's decision. The interpretation of a statute is a question of law fully reviewable by this Court. *Medcenter One, Inc. v. North Dakota State Bd. of Pharmacy*, 1997 ND 54, ¶ 13, 561 N.W.2d 634. Our primary goal is to ascertain legislative intent. *Id.* We look first to the language of the statute. *Id.* We read statutes as a whole to give meaning to each word and phrase, whenever fairly possible. *Id.* If the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. *Id.* "If the language of a statute is ambiguous, the court may resort to extrinsic aids to interpret the statute." *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Cas. Co.*, 452 N.W.2d 319, 322 (N.D.1990). A statute is ambiguous if it is susceptible to differing rational meanings. *Northern X–Ray Co., Inc. v. State ex rel. Hanson*, 542 N.W.2d 733, 735 (N.D.1996). Ambiguity may result where the Legislature has amended portions of a statute. *Roggenbuck v. North Dakota Workers Comp. Bur.*, 481 N.W.2d 599, 602 (N.D.1992) (noting "the ambiguity resulting from the amendments to section 65–05–15, N.D.C.C.").

[¶ 7] Section 28–32–15, N.D.C.C., is susceptible to differing rational meanings and

is thus ambiguous. On several occasions, the Legislature has amended different portions of the statute. Subsection one suggests the Commissioner, as a party to the administrative proceedings, may appeal from the ALJ's decision. N.D.C.C. § 28–32–15(1). It indicates "[a]ny party to any proceeding heard by an administrative agency, except in cases where the order of the administrative agency is declared final by any other statute, may appeal from the order." *Id.* " 'Party' means each person named or admitted as a party or properly seeking and entitled as of right to be admitted as a party. An administrative agency may be a party." N.D.C.C. § 28–32–01(8). Other subsections, however, suggest the Commissioner, as the agency, may not appeal. Subsection four provides "[a]n appeal shall be taken by serving a notice of appeal . . . upon the administrative agency concerned." N.D.C.C. § 28–32–15(4). Subsection five provides "[t]he agency and all other parties of record who are not designated as appellants must be named as appellees." N.D.C.C. § 28–32–15(5). Subsection six provides "[t]he bond or other undertaking [filed by the appellant] . . . may be enforced by the agency concerned." N.D.C.C. § 28–32–15(6).

[¶ 8] Because the statute is ambiguous, we may consider extrinsic evidence to interpret it. *State v. Brossart*, 1997 ND 119, ¶ 14, 565 N.W.2d 752. Under N.D.C.C. § 1–02–39:

If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:

1. The object sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects.

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble.

[¶ 9] Interpreting N.D.C.C. § 28–32–15 to preclude the Commissioner from appealing from the ALJ's final decision would frustrate the apparent, although not explicit, legislative intent. "[O]ur interpretation must be consistent with legislative intent and done in a manner which will accomplish the policy goals and objectives of the statutes." *In the Interest of K.G.*, 551 N.W.2d 554, 556–57 (N.D.1996) (citations omitted). The consequences of construing N.D.C.C. § 28–32–15 to preclude the Commissioner's appeal, a proper consideration under N.D.C.C. § 1–02–39(5), compel us to hold that in the limited context where an agency requests the OAH designate an ALJ to issue a final decision and appeal is not expressly prohibited,[2] the requesting agency is allowed to appeal under N.D.C.C. § 28–32–15.

[¶ 10] Finality is a concept central to the administrative process as it establishes the time to petition for reconsideration under N.D.C.C. § 28–32–14, the effectiveness of the order under N.D.C.C. § 28–32–14.1, and the time for appeal under N.D.C.C. § 28–32–15. Understood within the statutory construct of administrative agency actions, the finality of an order is a precondition to taking further action, not a prohibition against further appeal. *See* II Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.11, at 355 (3d ed.1994) (emphasizing "[c]ourts have long held that only 'final agency action' is reviewable" and noting final actions are "immediately reviewable" under section 704 of the Administrative Procedure Act). We believe the district court misinterpreted the word "final" in the Commissioner's request to the OAH as precluding appeal by the Commissioner from the ALJ's decision.

[¶ 11] The Legislature has developed a scheme allowing an agency the option to request the OAH designate an ALJ to issue a final decision rather than a recommendation. *See Blanchard v. North Dakota Workers Comp. Bur.*, 1997 ND 118, ¶ 14, 565 N.W.2d 485 (providing "[w]hen read as a whole, the statutory scheme for decisions by an ALJ manifests a legislative intent that an ALJ's decision is a final order when the Legislature has authorized the ALJ to issue a final order, or when the requesting agency has authorized the ALJ to issue a final order"). Section 28–32–13(2), N.D.C.C., indicates if a "person authorized by the agency head or by law to issue a final order, is presiding, the order issued is the final order." Under N.D.C.C. § 28–32–08.5(6), a hearing officer has a duty to "[m]ake findings of fact and conclusions of law and issue a final order, if required by statute or requested by an agency."

[¶ 12] In enacting N.D.C.C. § 28–32–08.5(6) and related statutes, the Legislature was concerned with "accurately reflect[ing] the independent nature of OAH hearing officers." *Hearing on H.B. 1089 Before the House Judiciary Comm.*, 54th N.D. Legis. Sess. (March 30, 1995) (memorandum from OAH Director Allen C. Hoberg to the Legislature).

[¶ 13] Likewise, in creating the OAH, the Legislature emphasized the value of independence and impartiality in administrative proceedings. "A central administrative tribunal is inherently separate from and therefore independent of the agency pursuing the issue under adjudication. This simple, yet fundamental feature dramatically enhances … fairness." *Hearing on S.B. 2234 Before the House Judiciary Comm.*, 52nd N.D. Legis Sess. (March 6, 1991) (letter from Charles D. McFaul, Chief Administrative Law Judge for the City of New York, to North Dakota

---

2. Section 10–04–16(1), N.D.C.C., does not prohibit the Commissioner's appeal since it does not contemplate a situation where an ALJ issues a final decision which dismisses the Commissioner's order. The statute mere- ly provides, "[i]f, after a hearing, the commissioner sustains an order previously issued, the sustaining order is subject to appeal." N.D.C.C. § 10–04–16(1).

Attorney General Nicholas J. Spaeth) [*"Hearing on S.B. 2234"*]. An independent hearing body also "would remove the appearance of impropriety" that may exist where an agency uses it own employees as hearing officers. *Hearing on S.B. 2234, supra* (remarks of North Dakota Senator Jim Maxson).

[¶ 14] An agency's option to request designation of an ALJ to issue a final decision is important where, as here, the party opposing the agency alleges the agency is prejudiced against the party. Juran and Moody alleged the Commissioner had improperly destroyed documents which Juran and Moody had relied upon in issuing its securities. Acknowledging the allegation, the Commissioner requested the OAH designate an ALJ to issue a final decision. In such circumstances, exercise of the agency's option to request a final ALJ decision completely separates the agency from the decisionmaker, thus "remov[ing][any] appearance of impropriety" and ensuring the actual independence and impartiality of the decisionmaker. *See Hearing on S.B. 2234, supra* (remarks of North Dakota Senator Jim Maxson). If we held an agency that exercised its option to request a final ALJ decision was precluded from appealing, we would deter agencies from using the option in circumstances such as this where the agency itself believes there is a benefit, because of the issues raised, to use an independent final decisionmaker.

[¶ 15] Because construing N.D.C.C. § 28-32-15 to preclude the Commissioner from appealing would frustrate the Legislature's apparent intent, we conclude where an agency requests the OAH designate an ALJ to issue a final decision, N.D.C.C. § 28-32-15 allows the requesting agency to appeal from that final decision unless such appeal is otherwise precluded. *See* N.D.C.C. § 54-44.3-12.2 (requiring the Central Personnel Division to request the OAH designate an ALJ to issue a final decision and precluding the Central Per-

sonnel Division from appealing from the ALJ's decision).

### III

[¶ 16] In addition to being allowed to appeal under N.D.C.C. § 28-32-15, the Commissioner must have standing to appeal from the ALJ decision. *See Shark v. U.S. West Communications, Inc.,* 545 N.W.2d 194, 197 (N.D.1996) (indicating "[w]hile this definition [of party in N.D.C.C. § 28-32-01(8) ] helped identify a party for purposes of the agency proceeding, it added nothing to the distinct concept of standing for judicial review of an agency decision"). The Commissioner argues he satisfies our test for standing to appeal from an agency decision.

[¶ 17] In *Application of Bank of Rhame,* 231 N.W.2d 801, 808 (N.D.1975), we established the requirements for standing to appeal from an agency decision. A person has standing if the person: (1) participates in the proceedings before an administrative agency, (2) is directly interested in the proceedings, and (3) is factually aggrieved by the agency's decision. *Shark,* at 198 (explaining *Application of Bank of Rhame* ).

[¶ 18] Here, the Commissioner participated in the proceedings before the ALJ and thus satisfies the first requirement for standing. Juran and Moody, the Commissioner himself, and the ALJ treated the Commissioner as a party to the proceedings before the ALJ. Juran and Moody moved to serve interrogatories upon the Commissioner, to exclude an affidavit submitted by the Commissioner, and for summary judgment. The Commissioner moved the ALJ to issue summary judgment. Both Juran and Moody and the Commissioner participated in oral argument before the ALJ. The ALJ accepted motions and briefs and heard arguments from both Juran and Moody and the Commissioner. The ALJ indicated his prehearing scheduling order was "based on the agreement of the parties."

[¶ 19] The Commissioner was directly interested in the proceedings and therefore meets the second requirement for standing. When administrative agencies "engage[ ] in a policy-making function, represent the public interest in the proper enforcement of the law being administered, and where the public as well as private parties have an interest in upholding the order of the agency, the agency itself is the proper party to represent this public interest." 2 Am.Jur.2d *Administrative Law* § 642 (1994 & Supp.1999) (discussing an agency's appeal from the final judgment of a court reviewing the agency's determination); *see also State v. Chicago & N.W. Ry. Co.,* 46 N.D. 313, 179 N.W. 378, 383 (1920) (noting "it is readily to be inferred that the board [of Railroad Commissioners] itself as a public agency is charged primarily with protecting the interests of the public"); *Board of Adjustment of City of Fort Worth v. Stovall,* 147 Tex. 366, 216 S.W.2d 171, 173–74 (1949) (reasoning the zoning board "represents the public interest in the proper enforcement of the particular law or regulation involved" and "there is a definite public interest to be protected" and thus reversing the lower appellate court's dismissal of the zoning board's appeal from the district court's decision). The Commissioner has a strong interest in and responsibility for the proper and uniform application of securities laws. Under N.D.C.C. § 10–04–16(1), the Commissioner may issue a cease and desist order or a suspension order for a violation of chapter 10–04 if "the commissioner deems [it] necessary or appropriate in the public interest or for the protection of investors." The statute also authorizes the Commissioner to impose fines for violations of the chapter. N.D.C.C. § 10–04–16(1).

[¶ 20] Finally, the Commissioner was factually aggrieved by the ALJ's decision and thus satisfies the third requirement for standing. The ALJ reversed the Commissioner's findings of securities laws violations and the Commissioner's imposition of civil penalties for the violations. The Commissioner's interest in ensuring proper and uniform application of securities laws for "the public interest" and "the protection of investors," *see* N.D.C.C. § 10–04–16(1), may be impeded by a decision adverse to the Commissioner's prior exercise of authority. That interest is protected by permitting judicial review of such decisions.

[¶ 21] We conclude the Commissioner satisfies the test established in *Application of Bank of Rhame* and thus does have standing to appeal from the ALJ's decision.

IV

[¶ 22] Because the ALJ is an employee of the OAH,[3] an independent and nonspecialized agency, the appropriate standard of review of a final decision made by an ALJ must be analyzed. When reviewing an agency decision, generally, a deferential standard applies.

[¶ 23] Regarding review of an agency's factual findings, we have explained we do not make independent findings or substitute our judgment for that of the agency, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Stewart v. North Dakota Workers Comp. Bur.,* 1999 ND 174, ¶ 7, 599 N.W.2d 280. "It is the agency's responsibility to assess the credibility of witnesses and resolve conflicts in the evidence." *Id.* An agency is required to adequately explain its rationale if it rejects the recommendations of an ALJ. *Blanchard v. North Dakota Workers Comp. Bur.,* 1997 ND 118, ¶ 21, 565 N.W.2d 485.

[¶ 24] Here, deference to the ALJ's factual findings is warranted. The ALJ had the opportunity to observe the witnesses and the "responsibility to assess the credibility of witnesses and resolve conflicts in

---

**3.** Under N.D.C.C. § 54–57–01(3), ALJs are employees of the OAH.

the evidence." *Stewart*, at ¶ 7. Moreover, even where an ALJ issues a mere recommendation, the ALJ is afforded some deference since the agency must sufficiently explain its rationale if it rejects the ALJ's recommendation. *Blanchard*, at ¶ 21.

[¶ 25] Regarding review of an agency's legal conclusions, we have indicated an agency "has a reasonable range of informed discretion in the interpretation and application of its own rules." *In the Matter of Permits to Drain Related to Stone Creek Channel Improvements and White Spur Drain*, 424 N.W.2d 894, 900 (N.D.1988). "[C]ourts generally defer to an agency's reasonable interpretation when the language is so technical that only a specialized agency has the experience and expertise to understand it or when the language is ambiguous." *Id.*

[¶ 26] Similar deference to the ALJ's legal conclusions is not justified. Unlike an agency, an ALJ does not necessarily have specialized knowledge or expertise. Section 54–57–03(1), N.D.C.C., indicates the OAH must conduct "all hearings of administrative agencies under chapter 28–32" except those expressly excluded. Although N.D.C.C. § 54–57–03(4) indicates "the director [of the OAH] shall attempt to assign an administrative law judge having expertise in the subject matter to be dealt with," the OAH is not a specialized agency and the ALJ is not interpreting the OAH's own rules. The ALJ here was interpreting and applying the rules of the Securities Commission, an agency independent from the OAH.

[¶ 27] We accordingly hold where an agency requests the OAH designate an ALJ to issue a final decision, judicial review of the ALJ's factual findings should involve the same standard of review used for agency decisions, but the ALJ's legal conclusions must be reviewed in the same manner as legal conclusions generally, without special deference to the ALJ.

V

[¶ 28] Because the Commissioner may appeal from the ALJ's final decision under N.D.C.C. § 28–32–15 and has standing to appeal, we reverse the dismissal of his appeal and remand to the district court for further proceedings consistent with this opinion.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., and JAMES M. BEKKEN, D.J., concur.

[¶ 30] JAMES M. BEKKEN, D.J., sitting in place of SANDSTROM, J., disqualified.