2010 ND 42

**Marlys ZIMMERMAN, Claimant and Appellant**

v.

**NORTH DAKOTA WORKFORCE SAFETY AND INSURANCE FUND, Appellee**

and

**Baptist Home, Inc., Respondent.**

No. 20090243.

Supreme Court of North Dakota.

March 16, 2010.

Stephen D. Little, Bismarck, ND, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

VANDEWALLE, Chief Justice.

[¶ 1] Marlys Zimmerman appealed from a judgment affirming a decision by Workforce Safety and Insurance ("WSI") which terminated her temporary partial disability benefits. We hold WSI properly interpreted and applied N.D.C.C. § 65–05–10(2) in terminating Zimmerman's partial disability benefits, and we affirm.

I

[¶ 2] Zimmerman incurred a lumbar spine injury at work in November 2000, and WSI accepted her claim and began paying her temporary partial disability benefits. The parties do not dispute that from November 2000 through April 2008, WSI paid Zimmerman temporary partial disability benefits for a cumulative period of five years, but WSI never paid Zimmerman temporary partial disability benefits for a continuous five-year period. Effective April 22, 2008, WSI terminated Zimmerman's temporary partial disability benefits, concluding she had received a cumulative total of five years of partial disability benefits and she was not entitled to further disability benefits for her work injury under N.D.C.C. § 65–05–10(2), which provides, in part, "[b]enefits must be paid during the continuance of partial disability, not to exceed a period of five years." WSI concluded N.D.C.C. § 65–05–10(2) "does not require that temporary partial disability benefits be paid for five continuous years; but rather during the continuance of disability (whether it be continuous or intermittent) not to exceed five years."

[¶ 3] Zimmerman requested a formal hearing. Zimmerman and WSI agreed the issue specified for hearing presented only a question of law and submitted the case to an administrative law judge ("ALJ") for a final decision on briefs and the stipulated record. See N.D.C.C. § 65–02–22.1 (initiated measure approved November 4, 2008, and providing for designation of ALJ from office of administrative hearings for evidentiary hearing and for issuance of final findings of fact, conclusions of law, and orders). The ALJ upheld WSI's decision to terminate Zimmerman's partial disability benefits, concluding N.D.C.C. § 65–05–10(2) is ambiguous and, after considering legislative history, authorizes termination of benefits if the aggregation of the periods an individual receives temporary partial disability benefits totals five years. The district court affirmed the ALJ's final decision for WSI.

II

[¶ 4] Courts exercise limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Bergum v. North Dakota Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178. The district court under N.D.C.C. § 28–32–46, and this Court under N.D.C.C. § 28–32–49, must affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 5] We exercise restraint in deciding whether WSI's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of WSI. *Reopelle v. Workforce Safety & Ins.*, 2008 ND 98, ¶ 9, 748 N.W.2d 722 (reviewing appeal from WSI decision adopting ALJ recommendation); *see In re Juran and Moody, Inc.*, 2000 ND 136, ¶¶ 22–27, 613 N.W.2d 503 (reviewing appeal from final decision by independent ALJ; giving deference to ALJ's factual findings but stating similar deference to ALJ's legal conclusions is not justified). In reviewing WSI's findings of fact, we decide only whether a reasoning mind reasonably could have decided WSI's findings were proven by the weight of the evidence from the entire record. *See Roberts v. North Dakota Workmen's Comp. Bureau*, 326 N.W.2d 702, 704–05 (N.D.1982) (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d

214, 220 (N.D.1979)). However, "[q]uestions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Midthun v. North Dakota Workforce Safety & Ins.*, 2009 ND 22, ¶ 9, 761 N.W.2d 572. But, we give deference to an administrative agency's construction of a statute in administering a law when that interpretation does not contradict clear and unambiguous statutory language. *Victor v. Workforce Safety & Ins.*, 2006 ND 68, ¶ 12, 711 N.W.2d 188.

### III

[¶ 6] The issue in this case involves the interpretation of language authorizing temporary partial disability benefits in N.D.C.C. § 65–05–10(2), which provides:

> If the injury causes temporary partial disability resulting in decrease of earning capacity, the disability benefit is sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury and the employee's wage-earning capacity after the injury in the same or another employment. Partial disability benefits are subject to a maximum of one hundred twenty-five percent of the average weekly wage in the state.

> . . . .

> 2. Benefits must be paid during the continuance of partial disability, not to exceed a period of five years. The organization may waive the five-year limit on the duration of partial disability benefits in cases of catastrophic injury as defined in section 65–05.1–06.1 or when the injured worker is working and has long-term restrictions verified by clear and convincing objective medical and vocational evidence that limits the injured worker to working less than twenty-eight

hours per week because of the compensable work injury. This subsection is effective for partial loss of earnings capacity occurring after June 30, 1991.

(Emphasis added.)

 [¶ 7] Our primary goal in interpreting that statutory language is to ascertain the intention of the legislation. *Reopelle*, 2008 ND 98, ¶ 13, 748 N.W.2d 722. We initially seek to ascertain that intention from the language of the statute itself, giving the words in the statute their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02; *Reopelle*, at ¶ 13. Statutes are construed as a whole to harmonize them and give meaning to each word and phrase, if possible. N.D.C.C. § 1–02–07; *Reopelle*, at ¶ 13. In enacting a statute, "[w]e presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted." *State v. Fasteen*, 2007 ND 162, ¶ 8, 740 N.W.2d 60. If a statute is ambiguous, extrinsic aids may be used to construe the statute to determine the intention of the legislation, including the object sought to be obtained, the legislative history, and the administrative construction of the statute. N.D.C.C. § 1–02–39; *Reopelle*, at ¶ 13. A statute is ambiguous if it is susceptible to different but rational meanings. *Reopelle*, at ¶ 13.

 [¶ 8] Zimmerman argues the five-year limit on partial disability benefits in N.D.C.C. § 65–05–10(2) is unambiguous and requires receipt of those benefits for a continuous and uninterrupted five-year period before those benefits may be terminated. She argues " 'continuance' means continuous, nonstop, unceasing, and ongoing" and " 'period' means a length or portion of time." She argues that when the plain meaning of those words is considered together, the statute does not authorize WSI to terminate her partial disability benefits unless she had received benefits for a period of five continuous and uninterrupted years. WSI responds N.D.C.C. § 65–05–10(2) is unambiguous and does not require benefits to be paid for an uninterrupted five-year period, but authorizes termination of those benefits after payment for a cumulative total of five years.

[¶ 9] The specific language in N.D.C.C. § 65–05–10(2) refers to payment of temporary partial disability benefits "during the continuance of partial disability, not to exceed a period of five years" and contemplates that WSI "may waive the five-year limit on the duration of partial disability benefits" under some circumstances. One source says "continuance" is a noun that means "continuation," "the extent of continuing: duration," "the quality of enduring: permanence." *Merriam–Webster's Collegiate Dictionary* 270 (11th ed. 2005). Another source defines "continuance" as "a holding on or remaining in a particular state or course of action: permanence esp. of action, condition, habits, or abode," "a continuing or remaining in some place or condition," or an "uninterrupted succession: continuation esp. of a species." *Webster's Third New International Dictionary* 493 (2002). In contrast, "continuous" is an adjective that means "marked by uninterrupted extension in space, time, or sequence," *see Merriam–Webster's Collegiate Dictionary*, at 270, or "characterized by uninterrupted extension in space: stretching on without break or interruption." *Webster's Third New International Dictionary*, at 494.

[¶ 10] The legislature did not use the adjective "continuous" in those portions of N.D.C.C. § 65–05–10(2), which say partial disability benefits are "not to exceed a

period of five years" and WSI "may waive the five-year limit on the duration of partial disability benefits." The plain language of N.D.C.C. § 65–05–10(2) requires a five-year limit for the duration of partial disability benefits, but does not explicitly explain how to calculate the five-year limit. Both Zimmerman and WSI claim N.D.C.C. § 65–05–10(2) is clear and unambiguous, and they each posit a plausible interpretation supporting their respective position. Under these circumstances, we conclude we may consider available extrinsic aids to ascertain the intention of the legislation, including the object sought to be obtained, the legislative history, and the administrative construction. *See Reopelle*, 2008 ND 98, ¶ 13, 748 N.W.2d 722.

[¶ 11] Initially, we note there is no evidence in this proceeding of a long-standing agency interpretation of N.D.C.C. § 65–05–10(2), which may be entitled to deference. In 1991, the legislature enacted the five-year limit for partial disability benefits. 1991 N.D. Sess. Laws ch. 714, § 47. *See Reopelle*, 2008 ND 98, ¶ 12 n. 1, 748 N.W.2d 722 (explaining similar language was introduced during 1989 legislative session in H.B. 1128, but was deleted during legislative process and was subsequently enacted in 1991 legislative session). The legislative history for that language generally reflects it was part of "a cost saving bill" and "cost containment measures." *See Hearing on S.B. 2246 Before Senate Judiciary Comm.*, 52nd N.D. Legis. Sess. (Feb. 4, 1991) (statement by David Kemnitz, President of North Dakota AFL–CIO); *Hearing on H.B. 1128 Before House, Industry, Business & Labor Comm.*, 51st N.D. Legis. Sess. (Jan. 17, 1989) (statement by Helen Tracy, Director of North Dakota Workers Compensation Bureau). During the 1991 legislative process, that language was combined with Senate Bill 2206. *See Hearing on S.B. 2206 Before House Industry, Business, &*

*Labor Comm.*, 52nd N.D. Legis. Sess. (March 5, 1991) (statement by Representative John Dorso). A summary prepared by a proponent of the language in N.D.C.C. § 65–05–10(2) states it "seeks to limit the receipt of partial disability benefits to a period of five years," subject to provisions for a waiver. *See Hearing on S.B. 2246 Before Senate Judiciary Comm.*, 52nd N.D. Legis. Sess. (Feb. 4, 1991) (written testimony of Pat Mayer, Assistant Claims and Rehabilitation Manager of the Workers Compensation Bureau).

[¶ 12] Zimmerman's reliance on a statement in the legislative history that WSI considers disability benefits "a continuum" is misplaced, because that statement refers to language in N.D.C.C. § 65–05–08 that disability benefits are not paid for a disability that is less than five consecutive calendar days. *See* 1991 N.D. Sess. Laws, ch. 714, § 43; *Hearing on S.B. 2206 Before Senate Judiciary and House Industry Business & Labor Conference Comm.*, 52nd N.D. Legis. Sess. (April 3, 1991) (statement by Pat Mayer, Assistant Claims and Rehabilitation Manager of the Workers Compensation Bureau). The legislative history for N.D.C.C. § 65–05–10 generally reiterates the language of that statute without explaining how the five-year limit is calculated, but a labor representative commented at one point during the legislative process that partial disability benefits were for "an aggregate of five year[s]." *Hearing on S.B. 2206 Before Senate Judiciary and House Industry Business & Labor Conference Comm.*, 52nd N.D. Legis. Sess. (April 5, 1991) (statement by David Kemnitz, President of North Dakota AFL–CIO). Although that statement was made in the context of a discussion about reducing from two years to one year the period of disability benefits for workers who have received a rehabilitation award under N.D.C.C. § 65–05.1–

06.1, we believe that statement recognizes the generally held understanding for calculating the five-year limit for partial disability benefits under the language of N.D.C.C. § 65–05–10(2).

[¶ 13] When the language of N.D.C.C. § 65–05–10(2) is considered in conjunction with the sparse legislative history for the specific provisions of that subsection and the general purpose of the legislation as a "cost saving bill," we conclude the intention of the legislation is to limit partial disability benefits to a cumulative time period of five years. We believe that practical interpretation is consistent with the context of the language in N.D.C.C. § 65–05–10, as a whole, especially in the absence of any explicit language requiring payment of the benefits for five continuous years. *See Fasteen*, 2007 ND 162, ¶ 8, 740 N.W.2d 60 (stating statutes construed in practical manner by considering context of statutes and purpose for which enacted). Moreover, Zimmerman's interpretation of the statute could require WSI to pay partial disability benefits for an indefinite number of years if benefits have been frequently stopped and then resumed during an applicable five-year period. In the absence of clear language to the contrary, we are not persuaded the legislature intended a result that is contrary to one of the stated purposes of the legislation as a cost saving bill. We decline to amend or add language to N.D.C.C. § 65–05–10(2) to authorize payment of partial disability benefits for five continuous years before those benefits may be terminated. *See Larsen v. North Dakota Dep't of Transp.*, 2005 ND 51, ¶¶ 11–12, 693 N.W.2d 39 (declining invitation to rewrite statute); *First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 17, 674 N.W.2d 1 (same).

[¶ 14] We conclude the ALJ properly interpreted N.D.C.C. § 65–05–10(2) to authorize partial disability benefits for a cumulative time period of five years and did not err in sustaining WSI's decision to terminate Zimmerman's partial disability benefits.

## IV

[¶ 15] We affirm the judgment.

[¶ 16] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.