2010 ND 126

**WORKFORCE SAFETY AND INSURANCE, and Bobcat Company, Appellants**

v.

**Cynthia AUCK, Appellee.**

No. 20090223.

Supreme Court of North Dakota.

July 2, 2010.

Lolita G. Hartl Romanick, Special Assistant Attorney General (argued), Grand Forks, N.D., and Leslie Bakken Oliver (appeared), Bismarck, N.D., for appellants.

Irvin B. Nodland (argued), Bismarck, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") and Bobcat Company appeal a

district court order affirming an Administrative Law Judge's ("ALJ") order reversing WSI's denial of death benefits to Cynthia Auck, the surviving spouse of Richard Auck ("Auck"). Because a reasoning mind reasonably could have determined the preponderance of the evidence proved a compensable injury, we affirm.

## I

[¶ 2] Auck began working for Bobcat Company, which was then the Melroe Manufacturing Company, in 1974. The majority of his time at the company was spent as an assembler. In November 2006, he experienced extreme pain in his leg while at work. While in the ambulance on the way to the hospital, Auck went into cardiac arrest. He died shortly thereafter. The surviving spouse filed for workers' compensation benefits, claiming unusual stress at Bobcat was at least fifty percent responsible for causing his death. WSI denied the application for benefits, as well as a request for reconsideration. The surviving spouse requested an independent review and an administrative hearing. After a request from WSI, the office of administrative hearings designated an administrative law judge to conduct the hearing. *See* N.D.C.C. § 65–02–22.1 (initiated measure approved Nov. 4, 2008, providing WSI shall contract with the office of administrative hearings for the designation of ALJs who shall conduct evidentiary hearings and issue final findings of fact, conclusions of law, and orders).

[¶ 3] At the hearing, Auck's primary care physician testified he had begun treating him in "roughly" 1994 and saw him "extremely frequently." He testified Auck had suffered from chronic pain, chronic stress, and depression related to his work. He testified stress was at least fifty percent of the cause of Auck's heart attack as compared to all other contributing factors. He testified that if Auck had not been working at Bobcat, he would not have had a heart attack when he did. A cardiology specialist retained by WSI testified Auck had other risk factors, such as hypertension, high cholesterol, obesity, smoking, and a family history of coronary disease. He also testified that the link between long-term stress and heart disease is controversial. A family medicine specialist retained by Bobcat agreed that Auck had other risk factors and testified that he was not aware of any study linking long-term stress and heart attacks.

[¶ 4] The ALJ concluded the greater weight of the evidence showed with reasonable medical certainty that the heart attack that resulted in Auck's death was caused by mental stimulus, namely unusual stress, resulting from his work with long-term chronic pain as an assembler at Bobcat. The ALJ also concluded that, with reasonable medical certainty, the unusual stress was at least fifty percent of the cause of the heart attack compared with all other contributing causes combined. The ALJ issued recommended findings of fact, conclusions of law, and an order to award the surviving spouse benefits. WSI remanded the decision back to the ALJ to issue a final order, and the ALJ issued final findings of fact, conclusions of law, and an order. *See* N.D.C.C. § 65–02–22.1 (initiated measure approved Nov. 4, 2008, providing WSI shall contract with the office of administrative hearings for the designation of ALJs who shall conduct evidentiary hearings and issue *final* findings of fact, conclusions of law, and orders) (emphasis added). The district court affirmed the ALJ's order.

[¶ 5] On appeal, WSI and Bobcat argue the ALJ's findings of fact are not supported by the preponderance of the evidence, the ALJ's conclusions of law are not

sustained by the findings of fact, and the final order does not accord with the law.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–42, and 65–10–01. The appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 7] As the claimant, the surviving spouse had the burden below of proving by a preponderance of the evidence that Auck suffered a compensable injury and that she was entitled to workers' compensation benefits. N.D.C.C. § 65–01–11; *Manske v. Workforce Safety & Ins.*, 2008 ND 79, ¶ 9, 748 N.W.2d 394. A "compensable injury" is an injury by accident arising out of and in the course of hazardous employment that must be established by medical evidence supported by objective medical findings. N.D.C.C. § 65–01–02(10). The term includes:

> Injuries due to heart attack or other heart-related disease, stroke, and physical injury caused by mental stimulus, but only when caused by the employee's employment with reasonable medical certainty, and only when it is determined with reasonable medical certainty that unusual stress is at least fifty percent of the cause of the injury or disease as compared with all other contributing causes combined.

N.D.C.C. § 65–01–02(10)(a)(3). "Unusual stress means stress greater than the highest level of stress normally experienced or anticipated in that position or line of work." *Id.* Therefore, the surviving spouse had the burden of proving by a preponderance of the evidence that: 1) The heart attack that resulted in Auck's death was caused by a mental stimulus,

here stress, that was caused by his employment with reasonable medical certainty; 2) The stress was "unusual," meaning stress greater than the highest level of stress normally experienced or anticipated in Auck's position or line of work; and 3) The stress was at least fifty percent of the cause of the heart attack as compared with all other contributing causes combined.

[¶ 8] Courts exercise limited appellate review of administrative agency decisions under the Administrative Agencies Practice Act, chapter 28–32 of the North Dakota Century Code. *Zimmerman v. N.D. Workforce Safety & Ins. Fund*, 2010 ND 42, ¶ 4, 779 N.W.2d 372. The district court under N.D.C.C. § 28–32–46 and this Court under N.D.C.C. § 28–32–49 affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommenda-

tions by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 9] Generally, a deferential standard applies when reviewing an agency decision. *N.D. Sec. Comm'r v. Juran & Moody, Inc.*, 2000 ND 136, ¶ 22, 613 N.W.2d 503. Reviewing an agency's factual findings, we do not make independent findings or substitute our judgment for the agency's judgment, but instead determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Id.* at ¶ 23. When reviewing an appeal from a final decision by an independent ALJ, similar deference is given to the ALJ's factual findings. *Id.* at ¶ 24. An ALJ has the opportunity to observe witnesses and the "responsibility to assess the credibility of witnesses and resolve conflicts in the evidence." *Id.* at ¶ 24 (quoting *Stewart v. N.D. Workers Comp. Bur.*, 1999 ND 174, ¶ 7, 599 N.W.2d 280). Similar deference to the ALJ's legal conclusions, however, is not justified. *Id.* at ¶ 26. An ALJ, unlike an agency, does not necessarily have specialized knowledge or expertise warranting deference to its legal interpretations and conclusions. *Id.* Although N.D.C.C. § 54–57–03(4) states the director of the office of administrative hearings ("OAH") shall attempt to assign an administrative law judge with expertise in the particular subject matter, the OAH is not a specialized agency and the ALJ is not interpreting the OAH's own rules. *Id.* Here, the ALJ interpreted and applied the rules of Workforce Safety and Insurance, an agency independent from the OAH. Therefore, we review the ALJ's factual findings under the same standard of review used for agency decisions, but we review the ALJ's legal conclusions in the same manner as legal conclusions generally. *Id.* at ¶ 27. Questions of law, includ-ing the interpretation of a statute, are fully reviewable on appeal. *Zimmerman v. N.D. Workforce Safety & Ins. Fund*, 2010 ND 42, ¶ 5, 779 N.W.2d 372.

III

[¶ 10] The ALJ concluded that the greater weight of the evidence showed with reasonable medical certainty that the heart attack that resulted in Auck's death was caused by mental stimulus, namely unusual stress, resulting from his work with long-term chronic pain as an assembler employed by Bobcat, and that, with reasonable medical certainty, the unusual stress was at least fifty percent of the cause of the heart attack as compared with all other contributing causes combined.

[¶ 11] WSI and Bobcat argue the ALJ's findings of fact are not supported by the preponderance of the evidence. They argue the ALJ's conclusions of law are not sustained by the findings of fact, because there is no objective medical evidence to support the statutory requirement. Thus, they argue, the ALJ's final order does not accord with the law.

A

[¶ 12] The ALJ found Auck died as the result of a heart attack caused by stress. WSI and Bobcat argue the preponderance of the evidence does not support a finding that Auck's death was the result of a heart attack or other heart-related disease caused by mental stimulus. Dr. Joel Blanchard, a family medicine specialist retained by Bobcat, raised the question of whether Auck's cardiac arrest was the result of a heart attack or a pulmonary embolism (a blood clot in the lungs). Bobcat contends on appeal that the ALJ's finding that Auck's death was caused by a heart attack is not supported by the preponderance of the evidence, and that the ALJ did not properly weigh the credibility

of the medical evidence or resolve conflicts in the evidence. In the findings of fact and conclusions of law, the ALJ wrote, "[C]onsidering all available evidence, as much as [Dr. Blanchard] was able to say was that he thought 'the pulmonary embolus is probably a little more likely and that is a gut feeling.'" The ALJ went on to conclude, "A 'gut feeling' is insufficient evidence of a fact. Just as a worker's compensation award cannot be made on surmise, conjecture, or a mere guess, *see Wherry v. North Dakota State Hospital,* 498 N.W.2d 136, 141 (N.D.1993), neither can it be denied upon 'a gut feeling.'" The ALJ also concluded that Auck's heart attack was primarily caused by continuing extraordinary stress. The ALJ recognized that Auck had numerous risk factors for cardiovascular disease in addition to the stress, but found "it was the continuing extraordinary stress he experienced that day as he was getting ready for another day of work with chronic pain which caused the heart attack which resulted in his death." The ALJ relied on the testimony of Dr. Jeffrey Smith, Auck's primary care physician, who testified that the long-term chronic pain Auck suffered during his employment with Bobcat caused him to experience extraordinary stress. Dr. Smith testified:

Well, he felt depressed primarily because of his pain and how that affected his life. You know, it was pervasive; it wasn't only at work, it overlapped into the rest of his life. And he felt rather hopeless because of that.

And he felt that he was stuck doing his job without any hope of improvement. The stress he felt was from knowing that he's going to be in pain a lot, despite pain medication, you can't have zero pain with pain medicine, and just the sense of dread that he had at work.

The surviving spouse also testified about the pain related to work-related injuries Auck had over the years. She testified:

Rick was put on many, many restrictions because of the extreme amount of surgeries that he had incurred through his employment that were all paid under workmen's comp. He had seven wrist surgeries, two major rotator cuff surgeries. The last major wrist surgery was stiffening of his wrist with a nine-inch plate.

There was a total of between 25 and 30 workmen's comp claims paid on for injuries, surgeries, etcetera, through . . . my husband's job employment of the 32 and a half years.

When asked what parts of his body were injured, she testified, "His wrist, his shoulder, his feet. My husband was in chronic pain for as many years as I can remember."

■ [¶ 13] WSI contends the ALJ's finding that long-term chronic pain can cause a heart attack is not supported by the preponderance of the evidence. Dr. Smith testified that cumulative long-term stress is a risk factor for heart attacks. He testified that he relied on *Braunwald's Heart Disease: A Textbook of Cardiovascular Medicine* and an article in the *Journal of the American College of Cardiology.* Dr. David Berman, a specialist in internal medicine and cardiology retained by WSI, testified that the correlation between depression and stress and heart disease is "controversial." The ALJ noted, however, that Dr. Berman relied on "an unidentified Internet source entitled, 'Overview of Sudden Cardiac Arrest and Sudden Cardiac Death,' which consisted of snippets of information, some of which included citations to published studies or provided links to additional information." Additionally, Dr. Blanchard, a family medicine specialist retained by Bobcat, testified that while he

was familiar with depression as a known risk factor for heart disease, he was not aware of any studies naming long-term chronic stress as a risk factor. The ALJ concluded:

> Neither Dr. Berman nor Dr. Blanchard offer a rationale for their respective dismissal of the effect of the years of chronic, debilitating pain which Auck experienced in the course of his work as a distinguishing factor for the effect of the resulting stress created by the prospect of another day of work with the long-term chronic pain for which Dr. Smith was treating Auck. For Auck's consultation on October 17, 2005, he noted for his plan for treatment that ... "the best option for him would indeed be not working." ... That the factor was thought by Dr. Berman to be "a little controversial" and that it had not been specifically addressed in the medical literature which Dr. Blanchard reads, does not provide sufficient bases to disregard or dismiss Dr. Smith's advice and opinions.

■■■■ [¶ 14] Confronted with a classic "battle of the experts," the ALJ, as fact-finder, may rely upon either party's witness. *See Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 11, 671 N.W.2d 784. As fact-finder, the ALJ has the responsibility to weigh the credibility of medical evidence. *See Barnes v. Workforce Safety & Ins.*, 2003 ND 141, ¶¶ 20–21, 668 N.W.2d 290. The ALJ must consider the entire record, clarify inconsistencies, and adequately explain its reasoning. *Id.* We exercise restraint in reviewing findings of fact and resolution of conflicting evidence, and we do not make independent findings. *Id.* at ¶ 21. Here, the ALJ clarified inconsistencies in the medical evidence and adequately explained his reasons for disregarding the testimony of Drs. Berman and Blanchard. A reasoning mind reasonably could have determined the preponderance of the evidence proved Auck died as the result of a heart attack caused by stress.

B

[¶ 15] The ALJ found the stress that caused Auck's heart attack was "unusual," meaning greater than the highest level of stress experienced or anticipated in the course of the work of a Bobcat assembler. The ALJ found that the stress that Auck experienced as a result of working with long-term chronic pain, described by Dr. Smith as "extraordinary," was unusual, because "stress resulting from working day-in and day-out with long-term chronic pain is not normally experienced or anticipated for the performance of the tasks" of an assembler employed by Bobcat Company. WSI, relying on *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, 764 N.W.2d 178, contends that pain is generally considered a symptom of an existing condition, but by itself is not sufficient evidence of a compensable injury. The ALJ, however, did not find that Auck's pain itself was a compensable injury; rather, the ALJ found the stress and depression resulting from working with chronic pain constituted "unusual stress" that caused Auck's heart attack.

■■■ [¶ 16] Bobcat and WSI argue Auck's stress was not "unusual stress." WSI argues his work was no different than the work performed by other Bobcat assemblers, and that his stress was personal in nature. Bobcat argues Auck did not experience an immediate, precipitating cause for his cardiac arrest, but instead was performing his usual work when the cardiac arrest occurred. At the hearing, Dr. Smith testified that Auck's stress was "extraordinary" and that if he had not been working at Bobcat, he would not have had a heart attack at that point in his life. Dr. Smith testified that Auck's work or

work conditions were the "primary cause" of his pain and depression. The ALJ found:

> [C]onsidering the evidence of Dr. Smith's testimony, both on his direct examination and his cross-examination, it is apparent that he considers that the greater part of the stress which Auck experienced was the product of two factors; first, the long-term chronic pain he suffered as a result of multiple physical injuries, both work-related and not work-related, he had sustained over the years, and, second, his work as an assembler employed by Bobcat Company which Dr. Smith understood to be "physically demanding."

Similarly, the surviving spouse testified that her husband was in chronic work-related pain. She testified:

> He was depressed. Irritable, I can say. He had many, many, many sleepless nights. I always asked Rick, "What's wrong? What can I do to help you?" He just put his hands on his head and—the pain.
>
> I went so far as I had to watch my husband completely learn how to reuse a fork, how to eat, to relearn how to tie a shoe, because he was unable, as we take for granted, to pick up a pen, you know, and bend your wrist. My husband could not do everyday tasks like he had before his wrist was stiffened up.

Dr. Smith testified, "The stress he felt was from knowing that he's going to be in pain a lot, despite pain medication, you can't have zero pain with pain medicine, and just the sense of dread that he had at work." Dr. Smith testified Auck had more medical problems and experienced more pain that his typical patients. Dr. Smith testified that if Auck had not experienced the extraordinary stress that he did, he would have gone on living for "a significant amount of time." In light of the evidence presented, a reasoning mind reasonably could have determined that the pain-induced stress Auck experienced was "unusual."

## C

[¶ 17] The ALJ concluded the stress was more than fifty percent of the cause of the heart attack as compared with all other contributing causes combined. Dr. Berman disagreed that Auck's work stress could trigger the heart attack he suffered. Dr. Blanchard testified that the degree of stress necessary to trigger a heart attack would have to be something "unbelievable," such as a person would experience after witnessing a shooting of everyone else present, and then only if the person had "severe heart disease." Dr. Blanchard testified that based on a review of Auck's chart, he had hypertension, was a smoker, had some obesity, led a sedentary lifestyle, had elevated cholesterol, and had a strong family history of heart disease, as well as having known coronary artery disease. Dr. Smith, on the other hand, testified that while Auck had various other risk factors for heart disease, such as cholesterol and blood pressure, he was on medication for his other conditions and they all improved. Dr. Smith testified that his stress and pain, however, did not improve. Dr. Smith testified that stress was at least fifty percent of the cause of Auck's injury as compared to all other factors that may have contributed to his death. He testified that it was more likely than not that had Auck not been working at Bobcat, he would not have had a heart attack on the day that he did, but instead would have gone on living a significant amount of time.

[¶ 18] When confronted with a classic "battle of the experts," the ALJ, as fact-finder, may rely upon either party's expert witness. *See Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 11, 671

N.W.2d 784. The ALJ must weigh the credibility of medical evidence, consider the entire record, clarify inconsistencies, and adequately explain its reasoning. *See Barnes v. Workforce Safety & Ins.*, 2003 ND 141, ¶¶ 20–21, 668 N.W.2d 290. When reviewing the ALJ's findings of fact and resolution of conflicting evidence, we exercise restraint and do not make independent findings. *Id.* at ¶ 21. Here, the ALJ, relying on *Siewert v. N.D. Workers Comp. Bureau*, 2000 ND 33, ¶ 25, 606 N.W.2d 501, stated that while opinions of treating doctors are not entitled to greater weight than opinions of other equally qualified physicians, the long-term doctor-patient relationship may afford the treating doctor a more comprehensive view of the claimant's medical history and condition. The ALJ noted neither Dr. Berman nor Dr. Blanchard had ever examined or treated Auck, while Dr. Smith had treated Auck since 1994. The ALJ found Dr. Smith's advice and opinions provided a comprehensive view of Auck's medical history and condition. The ALJ stated:

> While not specifically providing a quantitative analysis of the cause of the heart attack which resulted in Auck's death on November 29, 2006, Dr. Smith's advice that but for the stress of beginning work that morning he would not have suffered the heart attack provides an explanation and rationale for his opinion that the stress which triggered the heart attack was at least fifty percent of the cause of the heart attack compared with all other causes combined, *viz.*, the existing cardiovascular disease together with the various factors contributing to its development and the risk of a heart attack. Dr. Smith's long-term care of Auck must also be considered for the evaluation of the nature, extent, and effect of the stress which he experienced as a result of his work with long-term chronic pain. As previously mentioned, it is not without significance that Dr. Smith was Auck's primary care physician for more than eleven years and that he was a physician who was available to him and his wife without an appointment and who upon just such an occasion spent forty minutes discussing his and his wife's concerns and worries.

[¶ 19] The ALJ clarified inconsistencies in the medical evidence and adequately explained his reasoning. A reasoning mind reasonably could have determined the preponderance of the evidence proved the stress resulting in Auck's heart attack was more than fifty percent of the cause of the heart attack as compared with all other contributing causes combined.

[¶ 20] WSI and Bobcat argue the ALJ also erred as a matter of law because there is no "objective medical evidence" to support the statutory requirement. Such an argument ignores the testimony of Dr. Smith. The ALJ's conclusion that Auck suffered from unusual stress related to his job is supported by the findings of fact, which were based on Dr. Smith's expert testimony that Auck's work-related injuries caused him chronic pain, which led to chronic stress and depression. Dr. Smith testified stress was at least fifty percent of the cause of Auck's heart attack as compared to all other contributing factors. We cannot say the ALJ erred as a matter of law in determining that the heart attack that resulted in Auck's death was caused by unusual stress resulting from his work with long-term chronic pain as an assembler employed by Bobcat and that the unusual stress was at least fifty percent of the cause of the heart attack as compared with all other contributing causes combined.

IV

[¶ 21] A reasoning mind could reasonably have determined that the weight of

the evidence from the record supported the ALJ's findings of fact. The conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. We have considered the remaining arguments and determine they are either unnecessary to our decision or without merit.

[¶ 22]   The district court order affirming the ALJ's order reversing WSI's denial of death benefits to Cynthia Auck is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., and BENNY A. GRAFF, S.J., concur.

[¶ 24] The Honorable BENNY A. GRAFF, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.