Charles A. **ROGERS**, Relator,

v.

**CEDAR VAN LINES, INC.,** et al., Respondents.

No. 49722.

Supreme Court of Minnesota.

June 8, 1979.

Rider, Bennett, Egan & Arundel and Gregory M. Weyandt, Minneapolis, for relator.

Laurence F. Koll, St. Paul, for respondents.

## OPINION

ROGOSHESKE, Justice.

Employee seeks review of a decision of the Workers' Compensation Court of Appeals awarding him temporary total disability from September 15, 1977. He contends that his weekly wage as a part-time worker, on which the compensation award was based pursuant to Minn.St. 176.101, subd. 1(2), should have been increased under the provision of Minn.St. 176.011, subd. 3, relating to computation of the weekly wage of employees in an industry "where the hours of work are affected by seasonal conditions." Having concluded that the court of appeals correctly construed that provision and found it inapplicable, we affirm.

Minn.St. 176.011, subd. 3, provides in pertinent part:

" 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of injury but does not include tips and gratuities paid directly to an employee by a customer of the employer and not accounted for by the employee to the employer. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee

actually performed any of the duties of such employment, *provided further, that in the case of the construction industry, mining industry, or other industry where the hours of work are affected by seasonal conditions, the weekly wage shall not be less than five times the daily wage.*" (Italics supplied.)

The employer's principal business is household moving. The record establishes that between July 7, 1977, and September 15, 1977, a period of 10.6 weeks, employee worked occasionally as a helper loading and unloading furniture. He worked a total of 91½ hours during 16 days and received a wage of $4.50 an hour, a total of $416.10. A witness with 25 years' experience in the household moving industry testified that the months between May and September are busiest and that in his opinion the industry is a seasonal business. Opposed to this testimony was that of the employer's president, who said that its business, which also includes transportation of other cargo and packing of goods for overseas shipment, is not significantly greater in the summer and requires the hiring of extra workers throughout the year.

The compensation judge construed the statutory language "seasonal conditions" to refer to the seasons of the year and found that employee was not working in an industry "where the hours of work are affected by seasonal conditions." Accordingly, he computed employee's daily wage under the formula provided in § 176.011, subd. 3, for part-time employees and his weekly wage pursuant to § 176.011, subd. 18,[1] which qualified him for the minimum compensation of $36.60 pursuant to § 176.101, subd. 1(2).[2]

On employee's appeal the court of appeals affirmed, agreeing that the statutory phrase pertained to the seasons of the year. It had so interpreted the phrase in two earlier decisions. *Bailly v. Harley E. Johnson Sod Co.*, 26 W.C.D. 104 (1971), in which the employer's business was the harvest and laying of sod, and *Pugh v. Nelson*, 27 W.C.D. 65 (1973), in which the employer's business was snow removal.

We have never construed this portion of § 176.011, subd. 3. We recognize, as did the court of appeals, that construing "seasonal conditions" as seasons of the year is rather restrictive. As employee points out, "season" has several meanings.[3] The statute itself, however, evidences the intent to apply the provision to industries which do not operate throughout the year. It specifically enumerates the mining and the construction industries, and since open-pit mining and many types of construction cease during the winter, the ready implication is that "other industry where the hours of work are affected by seasonal conditions" was intended to include industries which either because of their nature or because of climatic conditions are not carried on in all seasons of the year.

The language in question was added by Ex.Sess.L.1967, c. 40, § 1. At that time, compensation laws of other states dealing with "seasonal employment" had been judicially construed to refer to occupations which can be carried on only at certain seasons or fairly definite portions of the year and not to include occupations which may be carried on through the entire year. See, *Hiestand v. Ristau*, 135 Neb. 881, 284

1. Minn.St. 176.011, subd. 18, provides in part: " 'Weekly wage' is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved. If the employee normally works less than five days per week or works an irregular number of days per week, the number of days normally worked shall be computed by dividing the total number of days in which the employee actually performed any of the duties of his employment in the last 26 weeks by the number of weeks in which the employee actually performed such duties * * *."

2. Minn.St. 176.101, subd. 1(2), provides: "The minimum weekly compensation benefits for temporary total disability shall be not less than 50 percent of the statewide average weekly wage or the injured employee's actual weekly wage, whichever is less. In no case shall a weekly benefit be less than 20 percent of the statewide average weekly wage."

3. See, Webster's Third New International Dictionary (1961) p. 2049.

N.W. 756 (1939); *Pryor v. Brickley*, 40 Del. 5, 5 A.2d 242 (1939); *Pettis v. Industrial Comm.*, 91 Ariz. 298, 372 P.2d 72 (1962); *Pacey v. Industrial Comm.*, 93 Ariz. 1, 377 P.2d 1015 (1963); *Dazely v. Luckenbach S. S. Co.*, 336 Pa. 432, 9 A.2d 905 (1939).

Since "seasonal employment" has been so widely construed in this manner, it seems probable that the legislature intended that "seasonal" should have that meaning in the phrase "other industry where the hours of work are affected by seasonal conditions." In the absence of evidence to the contrary, we construe the statutory language to mean industries which do not customarily operate throughout the year because of their inherent nature or because of climatic conditions. We conclude that employee was properly found not to be employed in such an industry.[4]

Although employee urges also that the employer-insurer's delay in paying compensation and medical expenses was grounds under Minn.St. 176.225, subd. 1,[5] for imposition of a penalty, we agree with the court of appeals' determination that the delay was not necessarily unreasonable.

Affirmed.

---

**4.** Although employee cites *Travelers Ins. Co. v. Helstrom*, 351 S.W.2d 321 (Tex.Civ.App.1961), which held a furniture loader for a moving company to be a seasonal employee, the decision is not persuasive. It apparently was based on a determination that the business, unlike the employer's business here, was not carried on for as long as 210 days a year.

**5.** Minn.St. 176.225, subd. 1, provides: "Upon reasonable notice and hearing or opportunity to be heard, the division or upon appeal, the worker's compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

"(a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

"(b) unreasonably or vexatiously delayed payment; or,

"(c) neglected or refused to pay compensation; or,

"(d) intentionally underpaid compensation."