2007 ND 107

In the Matter of the ESTATE
OF Gilbert ELKEN, Jr.,
Deceased.

Lorry Larson, Petitioner and Appellant

v.

Mark Fraase, Personal Representative
of the Estate of Gilbert Elken, Jr.,
Respondent and Appellee.

No. 20060331.

Supreme Court of North Dakota.

July 2, 2007.

Brett A. Brudvik (argued), Sara K. Sorenson (appeared) and William J. Brudvik (on brief), Ohnstad Twichell, P.C., Mayville, N.D., for petitioner and appellant.

Bruce H. Carlson, McNair, Larson & Carlson, Ltd., Fargo, N.D., for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Lorry Larson appeals from a district court order denying his claims against the estate of Gilbert Elken, Jr. We conclude the district court misapplied the law in deciding Larson's claims against the estate were untimely because he was not a reasonably ascertainable creditor under N.D.C.C. § 30.1–19–01. We hold Larson was a reasonably ascertainable creditor, and we remand for further proceedings on his claims.

I

[¶ 2] In February 1999, the trustees of the Orrie E. Larson and Dorothy E. Larson Trust granted Elken a life estate in a house in Mayville, with a remainder to Lorry Larson, Joan Tryhus, and Sandra Bloomquist. According to Lorry Larson, Elken lived in the house until July 2002, when he entered a nursing home in Mayville, where he lived until his death on February 16, 2005. During this time, Suzanne Rickards, a California resident, was acting as Elken's guardian. According to the personal representative of Elken's estate, he learned Rickards was Elken's guardian after Elken's death and before being appointed personal representative. The personal representative indicated he had limited contact with Rickards after his appointment. The record also reflects the personal representative mailed Rickards a "notice of information to heirs and devisees," informing her that she had an interest in Elken's estate as a devisee under his will. According to Larson, he made repairs to the house in 2004 after a pipe broke in a bathroom and caused extended water damage, he submitted a bill to Rickards and told her that not all the necessary repairs had been made, and Rickards had always indicated a willingness to pay for any additional damages. After Elken's death, the personal representative published a notice to creditors in the Traill County Tribune for three successive weeks in April 2005, which required Elken's creditors to present their claims to the personal representative within three months of the publication or those claims would be barred. The personal representative did not mail Larson, a California resident, a copy of the notice to creditors. More than a year later, Larson filed claims against Elken's estate on May 12, May 23, June 26, and June 30, 2006, seeking compensa-

tion for repairs to the house. The personal representative denied Larson's claims.

[¶ 3] Larson petitioned the district court for allowance of the claims. At a hearing on Larson's claims, the parties submitted affidavits by Larson and by the personal representative, and the parties agreed the district court could decide the case on the record presented to the court. The court denied Larson's claims, concluding they were not submitted to the personal representative within three months after the publication of the notice to creditors under N.D.C.C. § 30.1–19–03(1). The court decided Larson was not a known or reasonably ascertainable creditor under N.D.C.C. § 30.1–19–01, and the personal representative was not required to mail Larson a copy of the notice to creditors, stating:

> Under N.D.C.C. § 30.1–19–01, the legislature of the State of North Dakota has decided that "a reasonably ascertainable creditor includes a creditor who regularly submits billings to the decedent or the decedent's estate and to whose billings the Personal Representative has had access." The Court further looks, for example at the common definition of regular, according to Merriam–Webster dictionary, regular means, "recurring, attending or functioning at a fixed uniform or normal intervals." Therefore, based upon that and in regards to this matter, the Court would find and conclude and state that a reasonably ascertainable creditor, a regular creditor who regularly submits billings would be someone like the power company, the water company or the like. In regards to this matter, there was a pipe break, that's undisputed and the Court already indicated that and found and concluded that, but the Court does not believe that that was a regular billing or the type considered by the North Dakota Legislature as it's [sic] definition as set forth

in 30.1–19–01, to be a reasonably ascertainable creditor. It's a very narrow definition the Court would find, the Court assumes that the legislature did what it meant to do in regards to the matter in it's [sic] definition of a reasonably ascertainable creditor, is one who regularly submits billings, so that is not the case here. There may have been, you know more than one phone call, for example to the Guardian, but that is not akin to the power company or the like— regular monthly type billing, therefore the Court finds and concludes as stated on the record.

> In regards to this matter further, the Personal Representative through his affidavit indicated at no time prior to July 9, 2005 was he made aware of the claim in regards to this matter in July 9, 2005, the Court will find and conclude was the cut off for presentment in this case based upon the non-claim statute.

The court also declined to adopt a "good cause" exception for filing claims and found there was no evidence of fraud or affirmative deception to support Larson's equitable estoppel argument.

## II

[¶ 4] At the district court hearing, the parties agreed the court could decide the issues on the affidavits of Larson and the personal representative, and the court treated the proceeding as a bench trial. *See Kadlec v. Greendale Twp. Bd. of Twp. Supervisors*, 1998 ND 165, ¶ 9, 583 N.W.2d 817; *Roeders v. City of Washburn*, 298 N.W.2d 779, 781 (N.D.1980); *George v. Compson*, 251 N.W.2d 743, 744–46 (N.D.1977). In actions tried without a jury, a district court's findings of fact are governed by the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law,

if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake." *Edward H. Schwartz Constr., Inc. v. Driessen,* 2006 ND 15, ¶ 6, 709 N.W.2d 733 (quoting *Brandt v. Somerville,* 2005 ND 35, ¶ 12, 692 N.W.2d 144). A district court's conclusions of law, however, are fully reviewable on appeal. *H–T Enters. v. Antelope Creek Bison Ranch,* 2005 ND 71, ¶ 6, 694 N.W.2d 691.

### III

■ [¶ 5] Larson argues the district court erred in deciding his claims against Elken's estate were not timely. Under N.D.C.C. § 30.1–19–03(1), all claims against a decedent's estate which arose before the decedent's death are barred unless presented within three months after the first publication and mailing of notice to creditors if notice is given under N.D.C.C. § 30.1–19–01, and within three years after the decedent's death if notice to creditors has not been published and mailed. Section 30.1–19–01, N.D.C.C., outlines the requirements for notice to creditors and provides:

> Unless notice has already been given under this section, a personal representative upon appointment may publish a notice to creditors whose identities are not reasonably ascertainable. The notice must be published once a week for three successive weeks in a newspaper of general circulation in the county. If the personal representative elects to publish a notice to creditors then, in addition to publishing the notice to creditors, the personal representative shall mail a copy of the notice to those creditors whose identities are known to the personal representative or are reasonably ascertainable and who have not already filed a claim. The notice must announce the personal representative's

appointment and address and notify creditors of the estate to present their claims within three months after the date of the first publication or mailing of the notice or be forever barred. For the purpose of this section, a reasonably ascertainable creditor includes a creditor who regularly submits billings to the decedent or the decedent's estate and to whose billings the personal representative has had access.

[¶ 6] Larson argues the district court erred in deciding he was not entitled to actual notice because the court erroneously limited a reasonably ascertainable creditor to a person who regularly submitted billing statements to Elken. Larson argues the court erred in interpreting the term "includes" to be a term of limitation and the court's interpretation ignores the due process requirement that a personal representative must make reasonably diligent efforts to uncover the identities of creditors under *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

■ [¶ 7] Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865. The primary objective in interpreting a statute is to determine legislative intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r,* 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit."

N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). We also construe statutes to avoid constitutional infirmities. *E.g., City of Belfield v. Kilkenny*, 2007 ND 44, ¶ 8, 729 N.W.2d 120; *In re G.R.H.*, 2006 ND 56, ¶ 15, 711 N.W.2d 587.

[¶ 8] Use of the term "includes" in a statutory definition is a word of enlargement and not a term of limitation. *Amerada Hess Corp.*, 2005 ND 155, ¶ 13, 704 N.W.2d 8; *Hilton v. North Dakota Educ. Ass'n*, 2002 ND 209, ¶ 12, 655 N.W.2d 60; *Estate of Leier*, 524 N.W.2d 106, 110 (N.D. 1994); *Americana Healthcare Ctrs. v. North Dakota Dep't of Human Servs.*, 510 N.W.2d 592, 594 (N.D.1994); *State v. Vermilya*, 423 N.W.2d 153, 154–55 (N.D.1988); *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D. 1980). *See also North Dakota Legislative Drafting Manual* 95 (2007) ("[a]n exhaustive definition uses the word 'means' while a partial definition uses the word 'includes'[;] ... '[i]ncludes' is not a term of limitation"). Under our rules of construction, the definition of reasonably ascertainable creditor to "include" a creditor who regularly submits billings to the decedent and to whose billings the personal representative has had access is a definition of enlargement and not of limitation.

[¶ 9] The statutory mandate in N.D.C.C. § 30.1–19–01 for mailed notice to a known or reasonably ascertainable creditor was in response to the due process requirements announced by the United States Supreme Court in *Pope*, 485 U.S. 478, 108 S.Ct. 1340. *See Hearing on HB 1054 Before House Judiciary Comm.* 51st

N.D. Legis. Sess. (Jan. 11, 1989) (testimony of Jim Ganje, Staff Attorney for Legislative Council and member of Interim Judiciary Committee). In *Pope*, at 489–90, 108 S.Ct. 1340, the Court held that a probate provision for notification of a claim period solely by publication failed to satisfy due process, which requires actual notice to known or reasonably ascertainable creditors. The Court "disavowed any intent to require 'impracticable and extended searches ... in the name of due process.'" *Pope*, at 490, 108 S.Ct. 1340 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Court indicated "all that the [personal representative] need do is make 'reasonably diligent efforts,' ... to 'uncover the identities of creditors' [and f]or creditors who are not 'reasonably ascertainable,' publication notice can suffice." *Pope*, at 490, 108 S.Ct. 1340 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)). The Court explained "it [was] reasonable to dispense with actual notice to those with mere 'conjectural' claims." *Pope*, at 490, 108 S.Ct. 1340 (quoting *Mullane*, at 317, 70 S.Ct. 652). The Court remanded to the Oklahoma courts for further proceedings to determine whether reasonably diligent efforts would have identified a hospital that had provided services to a decedent during the decedent's last illness. *Pope*, at 491, 108 S.Ct. 1340. Under *Pope* and our rules of statutory construction, we hold a known or a reasonable ascertainable creditor under N.D.C.C. § 30.1–19–01 is an entity that can be uncovered with reasonably diligent efforts.

[¶ 10] Here, the district court construed reasonably ascertainable creditor under the "very narrow definition" in N.D.C.C. § 30.1–19–01 to be an entity who regularly submits billings "like the power

company, the water company or the like." The court decided Larson was not a reasonably ascertainable creditor entitled to a mailed copy of the notice to creditors, because he had not regularly submitted billings to Elken or the estate. However, the court's interpretation is contrary to the due process requirements of *Pope* and to the principle that a definition that uses the term "includes" is a word of enlargement and not a term of limitation. *E.g., Amerada Hess Corp.*, 2005 ND 155, ¶ 13, 704 N.W.2d 8. The district court's determination that Larson was not a reasonably ascertainable creditor is based upon its erroneous and limiting interpretation of the definition of that term in N.D.C.C. § 30.1–19–01. We therefore conclude the court misapplied the law in interpreting reasonably ascertainable creditor.

[¶ 11] Larson argues the district court's misapplication of the law does not require a remand for factual determinations because the undisputed facts establish Elken had an appointed guardian, the guardian knew about Larson's claims, and the personal representative knew Elken had a guardian. Larson thus claims the undisputed facts establish the personal representative could have discovered Larson by due diligence and Larson therefore was a reasonably ascertainable creditor entitled to actual notice that he must submit his claims to the personal representative. The personal representative responds the court did not err in deciding Larson was not a reasonably identifiable creditor, because the record shows the personal representative had no notice of circumstances that would have lead the personal representative to discover Larson's claim before the non-claim period expired. The personal representative argues that the facts failed to show the personal representative acted unreasonably or that he could have discovered Larson's claim through reasonable diligence. The personal representative argues he had no actual knowledge of any circumstances that would lead a prudent person to further inquiry.

[¶ 12] The parties' arguments recognize that the issue of whether an entity is a reasonably ascertainable creditor involves a factual inquiry. Here, the district court decided the factual issues on the affidavits of Larson and the personal representative. The personal representative's affidavit indicates that after Elken's death and before he was appointed personal representative, he learned Suzanne Rickards was Elken's guardian. The affidavit also indicates the personal representative had had limited contact with Rickards since his appointment. This record reflects that the personal representative mailed a "notice of information to heirs and devisees" to Rickards, informing her that she had an interest in Elken's estate as a devisee under his will. According to the uncontroverted statements in Larson's affidavit, he made repairs to the house in 2004 after a pipe broke in a bathroom, causing extended water damage, and he submitted a bill to Rickards. According to Larson, he told Rickards that not all the necessary repairs had been made, and Rickards had always indicated a willingness to pay for any additional damages. Elken died in February 2005, and the personal representative published notice to creditors in April 2005.

[¶ 13] Under our law, a guardian may have authority to deal with the ward's property, *see* N.D.C.C. § 30.1–28–12, and a personal representative has a duty to satisfy and settle any claims against an estate. N.D.C.C. § 30.1–18–15(27). Those provisions, when read together, obligate a personal representative to inquire about the state of a decedent's financial affairs, which includes contacting a known guardian about the decedent's

affairs. On this record, that inquiry would have uncovered Larson as a potential creditor. We therefore conclude the uncontroverted facts presented to the district court about the personal representative's knowledge of Elken's guardian and Larson's submission of a bill to that guardian leads to only one conclusion: Larson was a reasonably ascertainable potential creditor that could have been uncovered with reasonably diligent efforts by contacting Rickards. Although we express no opinion on the merits of Larson's claims, we conclude Larson's claims are not time barred, and we remand for further proceedings on his claims.

### IV

[¶ 14] We reverse the district court's order and remand for further proceedings.

[¶ 15] GERALD W. VANDE WALLE, C.J., LAWRENCE A. LECLERC, S.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 16] The Honorable LAWRENCE A. LECLERC, S.J., sitting in place of SANDSTROM, J., disqualified.