2017 ND 183

**INDUSTRIAL CONTRACTORS, INC., Appellant**

v.

**Leonard TAYLOR, Claimant and Appellee**

and

**Workforce Safety and Insurance, Respondent**

No. 20160322

Supreme Court of North Dakota.

Filed 7/31/2017

Lawrence E. King, Bismarck, ND, for appellant.

Leonard Taylor (on brief), Roseville, GA.

Amanda J. Brossart, Bismarck, ND, for claimant and appellee.

Jacqueline S. Anderson (on brief), Special Assistant Attorney General, Fargo, ND, for respondent.

Kapsner, Justice.

[¶1] Industrial Contractors, Inc., appeals from a judgment affirming a decision by an independent administrative law judge determining Leonard Taylor's employment with Industrial Contractors was not seasonal employment. Industrial Contractors

argues the ALJ misapplied the law for determining seasonal employment. We conclude the ALJ misapplied the law and the ALJ's decision is not supported by a preponderance of the evidence. We reverse and remand.

## I

[¶2] Industrial Contractors provides contract construction services for industrial clients and hires employees for its contracted projects by sending referral requests to local unions. Industrial Contractors has a collective bargaining agreement with the western North Dakota IBEW Local Union 714, under which Industrial Contractors may transfer employees hired through the Union from job to job. According to Randy Bartsch, business manager for IBEW Local 714, Industrial Contractors "has frequently moved employees from job to job and is currently moving employees to various projects as needed." According to Tyler Svihovec, the safety and risk manager for Industrial Contractors, its hiring process involves calling the applicable union halls for employees. Svihovec testified the "vast majority" of employees hired in that manner are laid off when a project is completed and it is "somewhat atypical" for Industrial Contractors to transfer an employee to other jobs.

[¶3] Taylor sustained a work-related injury on March 11, 2014, while working for Industrial Contractors through a referral with the IBEW Local Union 714 as a journeyman electrician at a power plant shutdown for scheduled maintenance. According to Taylor, his referral with Industrial Contractors was under a "long call" that could last indefinitely. According to Industrial Contractors, it hired Taylor in March 2014 for a spring power plant shutdown for scheduled maintenance lasting anywhere from six to twelve weeks. Sviho-vec testified Taylor was hired for a shutdown that was scheduled to end on May 16, 2014, and he was injured on his second day of work. According to Svihovec, Industrial Contractors hired Taylor for work that was not permanent and did not customarily operate throughout the entire year.

[¶4] Workforce Safety and Insurance ("WSI") accepted liability for Taylor's injury and initially decided his job with Industrial Contractors was seasonal employment under N.D.C.C. § 65-01-02(27) because it was subject to layoffs and was temporary, with an estimated completion date of May 16, 2014. Under that classification and N.D.C.C. § 65-01-02(5), WSI calculated Taylor's disability benefits based on an average weekly wage of $2,246 during the first twenty-eight consecutive days of his disability and thereafter on an average weekly wage of $681.

[¶5] After a formal hearing requested by Taylor, the ALJ determined Taylor's employment was not seasonal employment. The ALJ decided electricians hired by Industrial Contractors on regular referrals work an indefinite duration; they do not qualify as "not permanent" employees and they are not seasonal employees. The ALJ decided Industrial Contractors hired Taylor to do electrical work at the power plant under a regular referral and his employment would last until Industrial Contractors no longer needed him. The ALJ denied WSI's petition for reconsideration, which was joined by Industrial Contractors. The district court affirmed the ALJ's decision.

[¶6] Industrial Contractors appealed the decision of the district court. WSI filed a brief in support of and adopting the legal arguments of Industrial Contractors on appeal.

## II

■ [¶7] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, courts exercise limited appellate review of a final order by an administrative agency. *Workforce Safety & Ins. v. Auck*, 2010 ND 126, ¶ 8, 785 N.W.2d 186. Under N.D.C.C. §§ 28-32-46 and 28-32-49, the district court and this Court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

■ [¶8] In reviewing an ALJ's factual findings, a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). When reviewing an appeal from a final order by an independent ALJ, similar deference is given to the ALJ's factual findings because the ALJ has the opportunity to observe and assess witnesses' credibility and resolve conflicts in the evidence. *Auck*, at ¶ 9. Similar deference is not given to an independent ALJ's legal conclusions, and a court reviews the independent ALJ's legal conclusions in the same manner as legal conclusions generally. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal. *Id.*

## III

■ [¶9] Industrial Contractors and WSI argue the ALJ misapplied the legal standard for seasonal employment, and should have determined Taylor's job was seasonal employment. Industrial Contractors claims the ALJ clearly was confused with the short and long call distinction used by Taylor's union, which Industrial Contractors argues has nothing to do with its customary approach to hiring temporary employees for scheduled maintenance at power plant shutdowns. Industrial Contractors claims it may have transferred electricians to other jobs, but transfers were not customary, and argues the ALJ failed to focus on Industrial Contractors' customary practice. Industrial Contractors argues the ALJ's decision in this case conflicts with another ALJ's decision on the same issue in an analogous case.

[¶10] Although an unappealed decision in a different case may have some persuasive effect, the issue here involves the interpretation of "seasonal employment" in N.D.C.C. § 65-01-02(27) and the application of that definition to this case.

[¶11] Statutory interpretation is a question of law, fully reviewable on appeal. *Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186. The primary objective in interpreting a statute is to determine the intention of the legislation. *In re Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842. Words in a statute are given their plain, ordinary and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). We construe statutes to give effect to all of their provisions so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4). If the language of a statute is ambiguous or of doubtful meaning, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be obtained, the circumstances under which the statute was enacted and the legislative history. N.D.C.C. § 1-02-39. "A statute is ambiguous if it is susceptible to differing but rational meanings." *Western Gas Res., Inc. v. Heitkamp*, 489 N.W.2d 869, 872 (N.D. 1992).

[¶12] An injured claimant's disability benefits are based on the claimant's average weekly wage, and seasonal employment is a classification used for calculating a claimant's average weekly wage. *See* N.D.C.C. § 65-01-02(5) (defining methodology for calculating average weekly wage). *See also* 8 *Larson's Workers' Compensation Law* §§ 93.01[1] and 93.02[3][b] (2014) (discussing calculation of wage basis and benefits involving seasonal employment). In that context for determining a claimant's average weekly wage, we consider the definition of "seasonal employment" in N.D.C.C. § 65-01-02(27),[1] which provides:

> " 'Seasonal employment' includes occupations that are not permanent or that do not customarily operate throughout the entire year. Seasonal employment is determined by what is customary with respect to the employer at the time of injury."

[¶13] The ordinary meaning of the adjective "seasonal" pertains to or is dependent on the seasons of the year. *Merriam-Webster's Collegiate Dictionary*, 1120 (11th ed. 2005). The ordinary meaning of "employment" is the state of being employed or an occupation by which a person earns a living. *Id.* at 408. The term "occupation" ordinarily means the usual or principal business of one's life, especially as a means of earning a living, or a vocation. *Id.* at 858. Another source defines "seasonal employment" as "[a]n occupation possible only

---

1. The Legislature adopted the current language in N.D.C.C. § 65-01-02(27) to replace language stating that " '[s]easonal employment' includes an occupation that has periods of forty-five consecutive days of not receiving wages." 2003 N.D. Sess. Laws, ch. 562, § 2. According to the Executive Director of WSI, the amendment "simplifie[d] the definition of 'seasonal employment' to provide consistency and ease of application . . .by eliminating the reference to the requirement of 45 consecutive days without wages." *Hearing on H.B. 1060 Before House, Industry, Business, and Labor Comm.*, 58th N.D. Legis. Sess. (Jan. 21, 2003) (written testimony of Brent J. Edison); *Hearing on H.B. 1060 Before Senate Industry, Business, and Labor Comm.*, 58th N.D. Legis. Sess. (Mar. 3, 2003) (written testimony of Brent J. Edison).

during limited parts of the year, such as a summer-camp counselor, a baseball-park vendor, or a shopping-mall Santa." *Black's Law Dictionary*, 605 (9th ed. 2009).

[¶14] Consistent with the plain meaning of those terms, the meaning of "seasonal employment" in workers' compensation laws generally refers to occupations carried on only during certain seasons or portions of the year and does not include occupations that can be carried on throughout the entire year. Annot., *What is "Seasonal" Employment Within Provisions of Workmen's Compensation Act*, 93 A.L.R. 308 (1934).

[¶15] Other courts have applied this commonly understood meaning of seasonal employment to various occupations. *See Pettis v. Indus. Comm'n of Ariz.*, 91 Ariz. 298, 372 P.2d 72, 74-75 (1962) (stating seasonal employment refers to occupations that can be carried on only at certain times of the year and holding timber cutter was not seasonal employment); *Wozniak v. Indus. Comm'n of Ariz.*, 238 Ariz. 270, 359 P.3d 1014, 1018-20 (Ariz.Ct.App. 2015) (holding ballet dancer was not seasonal employment); *Rogers v. Cedar Van Lines, Inc.*, 281 N.W.2d 669, 671-72 (Minn. 1979) (stating seasonal employment means occupations that do not customarily operate throughout the year because of their inherent nature or climatic conditions and holding part-time moving company employee was not seasonal); *In re Application of Land O'Lakes Creameries, Inc.*, 243 Minn. 408, 68 N.W.2d 256, 259-61 (1955) (discussing turkey production in context of seasonal employer and remanding with directions); *Hogsett v. Cinek Coal & Feed Co.*, 127 Neb. 393, 255 N.W. 546, 547-48 (1934) (holding coal delivery is not seasonal employment); *Murillo v. Payroll Express*, 120 N.M. 333, 901 P.2d 751, 759-60 (N.M. Ct.App. 1995) (holding logging is not seasonal employment); *Froehly v. T.M.*

*Harton Co.*, 291 Pa. 157, 139 A. 727, 729-30 (1927) (holding dishwasher is not seasonal employment); *Nilson v. Clay Cty.*, 534 N.W.2d 598, 601-02 (S.D. 1995) (holding election judge's employment, although intermittent, was carried on throughout the year and was not dependent on seasons); *Meyer v. Roettele*, 64 S.D. 36, 264 N.W. 191, 195 (1935) (stating threshing is seasonal employment and not continuous throughout the year).

[¶16] Courts have particularly used the common understanding of the phrase "seasonal employment" where the applicable statute provides no additional definition or content. *See, e.g., Murillo*, 901 P.2d at 760; *Froehly*, 139 A. at 729-30. Our statute, in contrast, gives several indications that it is not limited to occupations only carried on during certain times of the year.

[¶17] The definition of seasonal employment uses the phrase "includes occupations." It is a well-established rule of statutory interpretation that the use of the term "includes" in a statutory definition is a non-exclusive word of enlargement and not a term of limitation. *See Elken*, 2007 ND 107, ¶ 8, 735 N.W.2d 842; *Amerada Hess Corp. v. State*, 2005 ND 155, ¶ 13, 704 N.W.2d 8; *Hilton v. N.D. Educ. Ass'n*, 2002 ND 209, ¶ 12, 655 N.W.2d 60; *Estate of Leier*, 524 N.W.2d 106, 110 (N.D. 1994); *Americana Healthcare Ctrs. v. N.D. Dep't of Human Servs.*, 510 N.W.2d 592, 594 (N.D. 1994); *State v. Vermilya*, 423 N.W.2d 153, 154-55 (N.D. 1988); *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D. 1980). *See also North Dakota Legislative Drafting Manual* 91 (2017) ("[a]n exhaustive definition uses the word means while a partial listing uses the word includes[;] . . . '[i]ncludes' is not a term of limitation").

[¶18] Under our rules of construction the use of the phrase "includes occupations" in N.D.C.C. § 65-01-02(27) enlarges the plain and ordinary meaning of "season-

al employment" to include occupations (1) that are not permanent or (2) that do not customarily operate throughout the year.

[¶19] The two alternatives are separated by "or" indicating the alternatives are disjunctive. *See State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828 (stating use of word "or" is disjunctive and indicates alternative between different things or actions). The first alternative indicates seasonal employment can be non-permanent employment, which is not customarily limited to certain times of the year.

[¶20] The second sentence of N.D.C.C. § 65-01-02(27) further distinguishes the meaning of "seasonal employment" under the application of our workers' compensation law from cases which apply only the commonly understood meaning of the phrase "seasonal employment." That sentence provides: "Seasonal employment is determined by what is customary with respect to the employer at the time of injury." Under that language, "seasonal employment" is not a generic term, but can vary depending upon what is customary with the employer. We conclude the ALJ failed to correctly apply that language of the statute to Industrial Contractors' employment of electricians. The ALJ's interpretation does not give meaning and effect to every part of the expansive definition of the phrase "seasonal employment" which the legislature has inserted into our statute.

[¶21] Applying the statute, as written, WSI initially accepted Taylor's claim and determined his work was "seasonal employment." After Taylor requested a formal hearing, the ALJ overturned WSI's initial "seasonal employment" determination. WSI filed a petition for reconsideration specifically raising the definition and application of "seasonal employment." Reconsideration was denied by the ALJ. On appeal, WSI joins Industrial Contractors in contending the ALJ and district court have misconstrued the law.

[¶22] In *Turnbow v. Job Service of North Dakota*, this Court said "[w]e will normally defer to a reasonable interpretation placed on a statute by the agency responsible for enforcing it, especially when that interpretation does not contradict the statutory language." 479 N.W.2d 827, 830 (N.D. 1992) (citation omitted). *See also Cass Cty. Elec. Coop., Inc. v. Northern States Power Co.*, 518 N.W.2d 216, 220 (N.D. 1994). WSI's interpretation is consistent with the statute.

[¶23] When an independent ALJ from the Office of Administrative Hearings renders an opinion adverse to the agency, an administrative agency may seek review of that adverse ruling as WSI did here. *In re Juran and Moody, Inc.*, 2000 ND 136, ¶ 1, 613 N.W.2d 503. In *Juran*, this Court noted that although deference is usually given to an agency's interpretation of its governing rules, no similar deference is given to the ALJ's legal conclusions. *Id.* at ¶¶ 25 -27.

[¶24] Taylor sustained his work related injury on March 11, 2014, while working as a journeyman electrician installing heavy cable. He had been hired by Industrial Contractors by referral through a union on March 6, 2014.

[¶25] In making the determination that Taylor was not a seasonal employee, the ALJ accepted as controlling the referral request form which designated employees who would work for strictly 14 days or less as "temporary." Other employees were referred to as "regular" employees. Nothing in the statute imposes a time limitation on seasonal employment. Taylor was hired as a regular, but not a permanent, employee. His employment was scheduled to be completed on May 16, 2014.

[¶26] The ALJ found, "[g]enerally, [Industrial Contractors'] management decides the amount of manpower anticipated to be needed, the union halls are contacted to fill the positions, and the electricians are typically hired for particular projects with anticipated durations." The ALJ also noted the testimony of Svihovec, the safety and risk manager for Industrial Contractors, that "most of [Industrial Contractors'] craft workers are hired in the spring and fall when the power plants have the outages to do scheduled maintenance" and that "all craft employees (pipefitters, boilermakers, electricians, millwrights, etc. that are hired through the various unions) are referred through the referral process for any given project and then laid off." Under N.D.C.C. § 65-01-02(27), under which " '[s]easonal employment' includes occupations that are not permanent . . . [and] is determined by what is customary with respect to the employer at the time of injury," the testimony of Svihovec established the custom of Industrial Contractors.

[¶27] Evidence in this record establishes Industrial Contractors hired 719 electricians in a five-year period from 2010 to 2015. The ALJ found that during the relevant time period of the time of Taylor's injury, Industrial Contractors had transferred nine electricians "from job to job." The record indicates that nine is a minimal number of electricians when compared to the total number of electricians hired during the same period for a particular project and laid off at the completion of the project. We conclude the transfer of nine electricians does not establish what is customary for Industrial Contractors for purposes of applying the definition of seasonal employment.

[¶28] The decision of the ALJ is not in accordance with the law. We reverse the district court judgment and direct that the matter be remanded to the agency for calculation of Taylor's disability benefits under N.D.C.C. § 65-01-02(5), in accordance with WSI's original order.

[¶29] Carol Ronning Kapsner

Lisa Fair McEvers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

Crothers, Justice, dissenting.

[¶30] I respectfully dissent. The majority holds the independent administrative law judge erred by determining Leonard Taylor's employment with Industrial Contractors was not seasonal employment. I would affirm, concluding the ALJ did not misapply the law and the ALJ's decision is supported by a preponderance of the evidence.

[¶31] This case boils down to whether the ALJ erred in finding Taylor's employment was "seasonal." That term is defined as follows:

" 'Seasonal employment' includes occupations that are not permanent or that do not customarily operate throughout the entire year. Seasonal employment is determined by what is customary with respect to the employer at the time of injury."

N.D.C.C. § 65-01-02(27) (2010).

[¶32] I would construe the language of N.D.C.C. § 65-01-02(27) as a whole to mean seasonal employment includes occupations that are not permanent and is determined by what is customary with respect to the employer's undertaking with that occupation at the time of the injury, as opposed to the employer's relationship with a particular individual. Contrary to our rules of interpretation for giving each word and phrase of a statute meaning, the majority focuses on the employer's relationship with an individual worker rather

than on the employer's relationship with the occupation.

[¶33] Under our rules of construction the use of the phrase "includes occupations" in N.D.C.C. § 65-01-02(27) enlarges the plain and ordinary meaning of "seasonal employment" to include "occupations that are not permanent or that do not customarily operate throughout the year." Under our statute, occupations that are not permanent or that do not customarily operate throughout the entire year nevertheless must satisfy the plain and ordinary meaning of seasonal employment. *See Majority Opinion*, at ¶ 13, ("The ordinary meaning of the adjective 'seasonal' pertains to or is dependent on the seasons of the year. *Merriam-Webster's Collegiate Dictionary*, 1120 (11th ed. 2005)").

[¶34] Consistent with the plain meaning, "seasonal employment" means employment during certain seasons or portions of the year, and does not include jobs performed throughout the entire year. *See Majority Opinion*, at ¶ 14, (citing Annot., *What is "Seasonal" Employment Within Provisions of Workmen's Compensation Act*, 93 A.L.R. 308 (1934)); *see also Majority Opinion*, at ¶ 15, (citing cases explaining what is and is not seasonal employment).

[¶35] As Professor Larson explains, the basic rule under seasonal employment statutes "is [that it is] the inherent seasonal nature of the employment that controls, not the claimant's seasonal connection with it." 8 *Larson's Workers' Compensation Law* § 93.02[3][b]. In *Froehly v. T.M. Harton Co.*, 291 Pa. 157, 139 A. 727, 729-30 (1927), the Pennsylvania Supreme Court considered whether an occupation was inherently seasonal and explained that a dishwasher at a summer amusement park was not seasonal employment:

"A reference to the Century Dictionary serves to recall that the word is formed from the substantive 'season,' plus the adjective suffix 'al,' meaning 'of the kind of' and 'pertaining to,' thus making 'season,' a word pertaining to a season or a specific part of a year; hence it may be said that a seasonal occupation is an employment pertaining to, or of that kind of, labor exclusively performed at specific seasons or periods of the year.

. . .

"It is in that current and conventional sense that the words 'season' and 'seasonal' are in popular use, and it is in that sense that 'seasonal,' as used in the Pennsylvania Workmen's Compensation Act of 1915, is to be taken. The word has a significance and application far different from the terms 'casual' and 'intermittent;' these two words, it is true, connote brevity of period of action, but intermittent or casual work may be carried on at any period of the year, irrespective of the season. Hop picking, however, and the gathering of the peach crop are certainly seasonal occupations. Both of these products come approximately regularly at definite seasons or months, at which time the hops are picked and the peaches gathered. Such work is complete in itself, and the labor and action it entails must be begun and finished within approximately a certain, usual, and definite period of the year— the period or months when hops are ready to be picked and peaches are ripe enough to be gathered. Seasonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it. On the other hand, labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is certainly not seasonal. The work of dishwashing comes under this latter classifi-

cation. It is performed as a matter of universal custom and necessity each day of the entire year, in homes, in restaurants, or wherever else table service is used, and is a work or occupation to perform which persons seek paid employment almost anywhere and at any time, or at all times, of the year. It may be, as in the present case, carried on at a summer resort for merely three months in the year—three months of the summer time—but at innumerable other places dishes are being washed, for wages, every day in the same year, and the clatter of the dishwasher will continue every day throughout the years to come. Appellant here confuses the character of work—dishwashing—performed by claimant, with the seasonal period during which the amusement park remained open to the public."

[¶36] The ordinary meaning of the phrase "seasonal employment" includes occupations establishing a threshold that requires seasonal employment to be related to or done during certain seasons of the year. When read together, the definition goes on to include seasonal employment occupations that are not permanent or that do not customarily operate throughout the entire year. N.D.C.C. § 65-01-02(27). The determination of what is a seasonal employment occupation looks at what is customary with respect to the employer for that occupation at the time of the injury. When the language for that determination is read together, the focus is both on whether the employment is "seasonal," and on what is customary for the employer regarding that particular occupation and not the particular employee.

[¶37] Here, the ALJ heard evidence about Industrial Contractors' customary practice with electricians, which was not initially provided to WSI, including evidence Industrial Contractors hired 719 electricians between 2010 and 2015. The ALJ made extensive findings about Industrial Contractors' customary practice with electricians and found:

"6. Generally, ICI management decides the amount of manpower anticipated to be needed, the union halls are contacted to fill the positions, and the electricians are typically hired for particular projects with anticipated durations. However, change orders are often issued which creates additional work and the employment is extended. Once the project is complete, the electricians can be laid off or they can be transferred to other jobs under the Collective Bargaining Agreement. It is a management decision that depends on the need for workers. WSI did not have this information when it determined Mr. Taylor was a seasonal employee.

7. ICI customarily hires and employs electricians throughout the year. In fact, there is no month when ICI does not employ electricians in some capacity. ICI's hiring of people in the occupation of electrician is not dependent on the seasons but turns on the contractor's success at securing projects through negotiations and the bidding process and the subsequent need for workers. WSI did not have this information when it determined Mr. Taylor was a seasonal employee.

8. Mr. Svihovec testified that all craft employees (pipefitters, boilermakers, electricians, millwrights, etc. that are hired through the various unions) are referred through the referral process for any given project and then laid off. However, during the relevant time period, at the time of Mr. Taylor's injury, ICI transferred multiple electricians from job to job. (*See, e.g.* Ex. 38, Employee Nos. 61713, 61006, 61038, 61714, 61847, 61257, 61054, 61067 and 61026.)

WSI did not have this information when it determined Mr. Taylor was a seasonal employee.

9. Mr. Svihovec also testified that most of ICI's craft workers are hired in the spring and fall when the power plants have the outages to do scheduled maintenance. However, ICI electricians are not limited to working just the spring and fall outages. As stated, an electrician may be hired for a specific project, but the electricians can also be transferred to other projects and work at projects for which they were not originally hired. Electricians may work beyond the spring and fall outages. Some are hired for projects in the winter months, others in the summer and some work throughout the year. Often, when an electrician is laid off, they are hired again, sometimes within a week or a few days, and continue to be employed by ICI. The ICI records substantiate an electrician keeps working until the employee is no longer needed. In fact, ICI has electricians that stay year round, year after year, through the transfer process. WSI did not have this information when it determined Mr. Taylor was a seasonal employee.

10. The greater weight of the evidence supports a finding that ICI electricians customarily operate throughout the year."

[¶38] On this record, I conclude the ALJ did not misinterpret or misapply the plain and ordinary meaning of seasonal employment as applied to the occupation of an electrician. Evidence here establishes Industrial Contractors customarily employed electricians in a capacity that was not dependent on the seasons of the year. I would affirm the judgment.

[¶39] Daniel J. Crothers