Crothers, Justice.
 

 [¶ 1] William Beaulieu appeals from a district court judgment reversing an administrative law judge's ("ALJ") order awarding benefits and affirming prior Workforce Safety & Insurance ("WSI") orders. The ALJ's order finding Beaulieu had a fifty percent permanent partial impairment rating was not in accordance with the law and not supported by the evidence. Therefore, the ALJ erred in awarding permanent partial impairment and permanent total disability benefits. We affirm.
 

 I
 

 [¶ 2] In September 2011 Beaulieu was injured while working for CMG Oil & Gas, Inc., when the truck he was in rolled on its side. In October 2011 WSI accepted his claim for benefits for injuries to his head, right shoulder and lumbar spine, and paid associated medical expenses and disability benefits. His treating physician reported on January 10, 2013, that Beaulieu reached maximum medical improvement.
 

 [¶ 3] In February 2014 Dr. Jane Stark conducted a commercial driver license ("CDL") evaluation of Beaulieu, documenting that he was indefinitely unable to drive under the CDL requirements. In April 2014 Dr. Stark again saw Beaulieu and assigned him "a 50% permanent total disability," stating:
 

 "The patient has significant and objective neuropsychological impairments that affect his daily functioning and ability to operate in a work environment. Due to the neuropsychological changes, especially with respect to cognition and integrated functioning, it does appear that he has significant changes which prohibit his performance of his normal role of a truck driver and of employability."
 

 In September 2014 WSI issued an administrative order awarding partial disability benefits based on a retained earnings capacity of zero. Beaulieu requested a hearing, asserting he was "entitled to permanent total disability benefits including a permanent impairment evaluation to assist in determining his eligibility for permanent total disability."
 

 [¶ 4] In March 2015 Dr. Terry Young performed a neuropsychological evaluation of Beaulieu and was asked to provide a
 
 *213
 
 permanent impairment rating. Dr. Young opined Beaulieu's deficits sustained as a result of the September 2011 work incident "triggered an exacerbation of a pre-existing neuropsychological condition causing disability beyond its normal manifestation and progression." Dr. Young assigned a ten percent permanent impairment for the neuropsychological condition. In April 2015 WSI issued a notice of decision, stating it did not have the necessary information to decide his permanent total disability status. Beaulieu requested reconsideration.
 

 [¶ 5] In May 2015 WSI's permanent impairment auditor sent Dr. Young a letter asking whether apportionment of impairment was appropriate because of a 1971 traumatic brain injury. In a June 2015 response "[b]ased on the Guides to the [Evaluation] of Permanent Impairment-6th Edition" ["AMA Guides"], Dr. Young apportioned five percent of Beaulieu's neuropsychological deficit to the September 2011 work incident and five percent to neuropsychological conditions that existed prior to 2011.
 

 [¶ 6] In July 2015 WSI issued a notice of decision, based on Dr. Young's initial report of ten percent whole body impairment, denying permanent impairment benefits because the impairment was below the fourteen percent threshold for an award. On July 31, 2015, WSI issued an amended notice of decision, denying permanent impairment benefits based on Dr. Young's opinion of five percent neuropsychological impairment related to the work injury. Beaulieu requested reconsideration, asserting the impairment determination failed to consider other compensable conditions.
 

 [¶ 7] In September 2015 WSI issued an administrative order denying permanent impairment benefits based on a five percent whole person impairment as Dr. Young opined. Beaulieu requested an administrative hearing before an ALJ. In December 2015 WSI issued an order denying permanent total disability benefits because he did not meet the statutory definition for permanent total disability.
 

 [¶ 8] WSI and Beaulieu's counsel agreed to another permanent impairment evaluation relating to other body parts. In May 2016 Dr. Douglas Martin examined Beaulieu and issued his report providing an impairment rating "based upon the principles of the American Medical Association Guides to the Evaluation of Permanent Impairment, Sixth Edition." Dr. Martin assigned Beaulieu a "5 percent whole person impairment rating from the traumatic brain injury central nervous system abnormality with the 3 percent impairment rating from the Facial Disorder/Disfigurement Table" for a combined "8 percent whole person permanent partial impairment rating." WSI's audit of Dr. Martin's report determined Beaulieu had a combined eight percent whole person impairment, and in June 2016 WSI issued an amended order denying permanent impairment benefits.
 

 [¶ 9] An administrative hearing before an ALJ was held on October 6, and December 12, 2016. The ALJ heard testimony from Beaulieu's brother, Mike Beaulieu; Dr. Martin; and WSI's Chief of Injury Services, Tim Whalen. In February 2017 the ALJ issued an order reversing WSI's orders that denied permanent impairment and permanent total disability benefits. The ALJ, primarily relying on Dr. Stark's opinion, found the greater weight of the evidence established Beaulieu had a fifty percent permanent impairment rating, was entitled to permanent impairment benefits based on that rating, and also was entitled to permanent total disability benefits. WSI requested reconsideration, which the ALJ denied.
 

 *214
 
 [¶ 10] WSI appealed to the district court. The court reversed the ALJ's order, concluding the ALJ erred in relying on Dr. Stark's fifty percent permanent total disability rating of Beaulieu's impairment because that assignment was "inconsistent with the law and not supported by the evidence." The court affirmed WSI's orders from September 2015, December 2015 and June 2016.
 

 II
 

 [¶ 11] Courts exercise limited appellate review of an administrative agency's final order under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32.
 
 Indus.Contractors, Inc. v. Taylor
 
 ,
 
 2017 ND 183
 
 , ¶ 7,
 
 899 N.W.2d 680
 
 . Both the district court and this Court must affirm an administrative agency order unless:
 

 "1. The order is not in accordance with the law.
 

 2. The order is in violation of the constitutional rights of the appellant.
 

 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
 

 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
 

 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
 

 6. The conclusions of law and order of the agency are not supported by its findings of fact.
 

 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
 

 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."
 

 N.D.C.C. § 28-32-46 ;
 
 see also
 
 N.D.C.C. § 28-32-49.
 

 [¶ 12] On appeal this Court reviews the agency's decision, but "[t]he district court's analysis is entitled to respect if its reasoning is sound, because the legislatively-mandated district court review cannot be ineffectual."
 
 Elshaug v. Workforce Safety & Ins.
 
 ,
 
 2003 ND 177
 
 , ¶ 12,
 
 671 N.W.2d 784
 
 . In reviewing an independent ALJ's final order, "a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record."
 
 Indus. Contractors
 
 ,
 
 2017 ND 183
 
 , ¶ 8,
 
 899 N.W.2d 680
 
 ;
 
 see also
 

 Power Fuels, Inc. v. Elkin
 
 ,
 
 283 N.W.2d 214
 
 , 220 (N.D. 1979). "[D]eference is given to the ALJ's factual findings because the ALJ has the opportunity to observe and assess witnesses' credibility and resolve conflicts in the evidence."
 
 Indus. Contractors
 
 , at ¶ 8. However, "[s]imilar deference is not given to an independent ALJ's legal conclusions, and a court reviews the independent ALJ's legal conclusions in the same manner as legal conclusions generally."
 

 Id.
 

 Questions of law are fully reviewable on appeal, including statutory interpretation.
 

 Id.
 

 III
 

 [¶ 13] Beaulieu argues a preponderance of the evidence supports the ALJ's findings of fact determining Beaulieu had fifty percent permanent impairment.
 

 [¶ 14] Section 65-05-12.2, N.D.C.C., provides the terms for WSI to determine a permanent impairment award when an injured employee's compensable injury causes permanent impairment. Section 65-05-12.2(3), N.D.C.C., states:
 

 *215
 
 "An injured employee is entitled to compensation for permanent impairment under this section only for those findings of impairment that are permanent and which were caused by the compensable injury. The organization may not issue an impairment award for impairment findings due to unrelated, noncompensable, or pre-existing conditions, even if these conditions were made symptomatic by the compensable work injury, and regardless of whether section 65-05-15 applies to the claim."
 

 [¶ 15] "An injured employee is eligible for an evaluation of permanent impairment only when all conditions caused by the compensable injury have reached maximum medical improvement." N.D.C.C. § 65-05-12.2(4). Section 65-05-12.2(5), N.D.C.C., provides that "[a] doctor evaluating permanent impairment shall include a clinical report in sufficient detail to support the percentage ratings assigned." Under N.D.C.C. § 65-05-12.2(8), WSI may not issue an impairment award "unless specifically identified and quantified within the sixth edition of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment.' "
 
 See also
 
 N.D. Admin. Code § 92-01-02-25(2) ("Permanent impairment evaluations must be performed in accordance with the American medical association guides to the evaluation of permanent impairment, sixth edition, and modified by this section. All permanent impairment reports must include the opinion of the doctor on the cause of the impairment and must contain an apportionment if the impairment is caused by both work-related and non-work-related injuries or conditions.").
 

 [¶ 16] Here, in reversing WSI's orders and awarding benefits, the ALJ found the greater weight of the evidence supported Dr. Stark's opinion assigning a fifty percent disability rating and disregarded or gave little weight to the impairment evaluations of both Drs. Young and Martin. The ALJ specifically found:
 

 "71. The greater weight of the evidence established Dr. Stark opined the sequelae Mr. Beaulieu is experiencing from a neuropsychological standpoint are a result of his September 2011 TBI [traumatic brain injury ], determined significant and objective neuropsychological impairments that affect daily functioning and his ability to operate in a work environment, especially relating to cognition and integrated functioning, prohibit his performance of his normal role as a truck driver and of employability, and assigned a 50% permanent impairment rating.
 

 "72. Dr. Stark
 
 more likely than not
 
 used the [AMA] Guides in her evaluation of Mr. Beaulieu, as her determination specifies it is his alteration in mental status, cognition, and highest integrative functioning (MSCHIF), particularly cognition and integrated functioning, that prohibits his performance of his usual role as a truck driver, the same language that is used under Class 4 on Table 13-8 of the Guides, and her rating is consistent with the 50% assessment under this category.
 

 "73. The greater weight of the evidence established Dr. Stark's assignment of a 50% permanent impairment rating is appropriate, given the fact that physician discretion and clinical judgment provides the basis for a rating under Chapter 13, and this rating is consistent with the record as a whole and supported by the greater weight of the evidence."
 

 *216
 
 (Footnote omitted and emphasis added.) In a footnote to finding 72 the ALJ stated "[w]hile Dr. Stark called it a disability rating, she was clearly assessing impairment under the Guides." The ALJ also found the greater weight of the evidence did not support apportionment, finding that evidence regarding Beaulieu's prior traumatic brain injury was "scant" and that Dr. Young apportioned "half the permanent impairment to a prior TBI without providing any basis for that apportionment figure."
 

 [¶ 17] Beaulieu argues the district court erred in reversing the ALJ's order because the ALJ appropriately addressed the conflicting medical opinions regarding his permanent impairment percentage. He contends the ALJ weighed the medical opinions of the three physicians who considered Beaulieu's permanent partial impairment percentage-
 
 i.e.
 
 , Dr. Young, Dr. Martin, and Dr. Stark. While WSI argues Dr. Stark did not apply the AMA Guides, Beaulieu asserts the ALJ found Dr. Stark's opinion was "more likely than not" based on the AMA Guides. He contends the ALJ considered the conflicting medical opinions, discounted the evaluations of Dr. Young and Dr. Martin, and properly relied on Dr. Stark's report. He argues the ALJ's use of Dr. Stark's impairment rating was reasonable in light of the record and this Court should not reweigh the evidence.
 

 [¶ 18] WSI responds that only Dr. Young's and Dr. Martin's evaluations met the statutory requirements for determining a permanent impairment percentage and that there is "no support" Dr. Stark's opinion was about permanent impairment or in accordance with the AMA Guides, but was likely based on Wisconsin law. WSI also contends the ALJ erred in finding Beaulieu's neuropsychological impairment should not be apportioned. In reversing the ALJ's order, the district court agreed with WSI's argument that a fifty percent permanent total disability assignment was inconsistent with the law and not supported by the evidence.
 

 [¶ 19] The dispositive issue is whether Dr. Stark's fifty percent "permanent disability rating" of Beaulieu was made under the sixth edition of the AMA Guides as required by N.D.C.C. § 65-05-12.2 and N.D. Admin. Code § 92-01-02-25. On our review, the evidence is insufficient to establish Dr. Stark's report was based on the AMA Guides. Dr. Stark's medical report assigning a "50% permanent total disability" to Beaulieu, while using similar language, does not state the evaluation was conducted under the AMA Guides. Our law is clear that a permanent impairment evaluation must be conducted under the sixth edition of the AMA Guides. No evidence shows Dr. Stark actually used the AMA Guides. While the ALJ found Dr. Stark "more likely than not" used the AMA Guides, this finding does not comport with the clear statutory requirement. There also is no finding or evidence establishing which edition of the AMA Guides Dr. Stark might "likely" have used.
 

 [¶ 20] We conclude the ALJ erred in finding Dr. Stark used the sixth edition of the AMA Guides in her evaluation of Beaulieu, and no evidence supports that finding. Therefore, the ALJ erred in finding Beaulieu had a fifty percent permanent partial impairment rating.
 

 IV
 

 [¶ 21] Beaulieu argues he is entitled to permanent total disability benefits because he has a permanent impairment rating of at least twenty-five percent. Under N.D.C.C. § 65-01-02(26), "permanent total disability" is defined as:
 

 "disability that is the direct result of a compensable injury that prevents an employee from performing any work and
 
 *217
 
 results from any one of the following conditions:
 

 ....
 

 g. A medically documented brain injury affecting cognitive and mental functioning which renders an employee unable to provide self-care and require supervision or assistance with a majority of the activities of daily living; or
 

 h. A compensable injury that results in a permanent partial impairment rating of the whole body of at least twenty-five percent pursuant to section 65-05-12.2."
 

 See also
 
 N.D.C.C. § 65-01-02(25)(g) and (h) (2011).
 

 [¶ 22] Beaulieu concedes he is not entitled to a disability finding under subsection (g) because the ALJ found he is able to provide self-care and does not require assistance with his activities of daily life. However, he claims permanent total disability under subsection (h) if this Court decides the ALJ properly decided he has a fifty percent impairment rating based on Dr. Stark's evaluation.
 

 [¶ 23] Because the ALJ erred in finding Beaulieu had a fifty percent permanent impairment rating, the ALJ also erred in concluding Beaulieu was permanently and totally disabled under subsection (h), which requires permanent partial impairment of at least twenty-five percent. Therefore, the district court did not err in reversing the ALJ's order and in affirming WSI's orders deciding Beaulieu is not entitled to permanent impairment benefits and permanent total disability benefits.
 

 V
 

 [¶ 24] Beaulieu's other arguments have been considered and determined they are either without merit or unnecessary to our decision. The judgment is affirmed.
 

 [¶ 25] Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.